EASTERN DIS.
May, 1841.

HARMAN'S
HEIRS
vs.
O'MORAN ET AL.

18L 526
46  671

## HARMAN'S HEIRS vs. O'MORAN ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a judgment, execution and sale are produced, it is sufficient to convey the property, unless such error or fraud is pleaded and established, as will set aside sales in ordinary cases.

A sale, where specified boundaries are given, is *per aversionem*, and includes all the ground between the points mentioned, whether the measure be correctly stated or not.

This is a petitory action, in which the plaintiffs claim 12 lots

of gr⬛nd, comprized in a block or part of a square, fronting on Circus street, and bounded by St. Paul and Hevia streets, which they allege their father, Thomas L. Harman, purchased in 1819 from Edward Livingston, and now in the possession and claimed by the defendants Owen O'Moran, M. Ryan, T. Park, J. Field, and L. Janin.

EASTERN DIS.
*May*, 1841.

HARMAN'S
HEIRS
*vs.*
O'MORAN ET AL.

The defendants mostly severed in their answers, but all claimed title under a Probate sale of Jean Gravier's estate.

The evidence went to show, that the property in question, though formerly belonging to Gravier, had been sold at Sheriff's sale under a judgment and order of seizure or *fieri facias*, in 1816, and purchased by Livingston, who sold to the plaintiffs' ancestor.

On these pleadings and issues, and the evidence, there was judgment for the plaintiffs ; and the defendants appealed.

*Lockett & Micou*, for the plaintiffs.

*L. Janin*, for the defendants.

*Garland, J.* delivered the opinion of the court.

The plaintiffs allege, that as heirs of their father they are the owners of a piece of ground, having a front of thirty-seven feet on Circus street, running back to St. Paul street by lines, that gradually close, so that on the latter street there is a front of sixteen feet. They say, the defendants have taken possession of said piece of ground, and set up title to it. The defendants, Ryan, and Park, and Field, in their separate answers admit, they are in possession of portions of the ground claimed, which has been divided into six lots of different dimensions, ; they set up titles, derived from a Probate sale, made of a portion of the estate of the late Jean Gravier, who, they allege, was the real owner, and in possession at the time of his death ; they plead a prescription of ten and twenty years, and call the curator of the estate of Gravier in warranty. O'Moran for answer sets up the same grounds of defence as his co-defendants, and further claims of the plaintiffs two thousand dollars for improve-

EASTERN DIS.
May, -1841.

HARMAN'S
HEIRS
vs.
O'MORAN ET AL.

ments, put on the lot in his possession; and also calls Gravier's curator in warranty. Janin alleges defences similar to Park and Ryan, and Field, and further says, that the Sheriff's sale to Edward Livingston, under whom the plaintiffs claim, is of no force or validity, and if it be, it does not include the ground in controversy; he also calls the curator in warranty.

The curator of the succession of Gravier pleads a general denial, and further, his intestate held the properrty up to the time of his death, under an adjudication made to him, by the Spanish authorities, in 1797, of all the estate of Bertrand Gravier. He admits the sales to the defendants, and also says, that the sale from the Sheriff to Livingston does not include or cover the premises; but if it does, he says, it is null and void, as none of the formalities required by law to render the sale valid, were complied with, nor was said sale accompanied by such proceedings as were necessary to make it translative of property.

The evidence shows, that on the 30th of September, in the year 1811, Jean Gravier, by public act, mortgaged to Joseph Richet and others, "un lot de terre contenant douze terrains sitüés dans le faubourg Ste. Marie, ayant cent huit pieds de face à la rue du Cirque sur toute la profondeur, joignant d'un côté à la succession Chesneau, et de l'autre au Sieur Jacob Moquin, sur lequel lot de terre se trouve établie une briqueterie, &c." Upon this mortgage, in October, 1814, the mortgagees commenced an action, that was prosecuted to judgment, of which Gravier was notified; subsequently an order of seizure and sale was issued, levied on the property in conformity with the judgment; it was sold under this order to Edward Livingston, on twelve months credit, as appears by the returns of the Sheriff and his deed, in which it is described as "a lot of ground situated in the suburb St. Mary, together with all the brick-yard and other buildings thereon erected; said lot containing one hundred and eight feet on Circus street, adjoining on the one side the property of the estate of Chesneau, and on the other by the property belonging to Mr. Jacob Moquin."

By an act, dated the 29th of the month of April, in the year 1806, Jean Gravier sells to Jacob Moquin "une portion de terre située au faubourg Ste. Marie, bornée d'un côté par la Veuve Delord, de l'autre par un hangard appartenant au vendeur; qui se nomme hangard à poterie, rue du Cirque, contenant six cent dix huit pieds de face depuis la barrière de la Veuve Delord." By reference to the evidence of Pilie, the City Surveyor, it appears, he has more than once measured the line of this property on Circus street, and he says, it reached to Moquin's fence, adjoining the brick-yard.

By reference to another sale, from Gravier to John Goodwin, it will appear, he sold him three squares, supposed to contain thirty-six lots, of sixty feet front, by one hundred and twenty deep, on which was situated a brick-yard, and the buildings and fixtures necessary to carry it on. It is also stipulated, that Goodwin was to have the right of taking earth out of Gravier's Canal in Poydras street, to deepen the same; also the privilege of cutting wood on his land; he is also bound to open two streets on these squares at his own expense, and if more than thirty six lots are found to be in the squares, Goodwin is to have them, if he shall pay at the rate of four hundred dollars for each. From an inspection of the plans in the record, it is evident, there were more than thirty-six lots, which was probably discovered, when Goodwin laid off Hevia street, and as it does not appear he ever paid for the extra number of lots, it accounts for a portion of the brick-yard still remaining in Gravier's possession. Goodwin afterwards sold the property to the Heirs of Chesneau.

A number of years after these sales, Mr. Livingston sold to the ancestor of the plaintiffs, and describes the property as " douze lots de terre, situés au faubourg Ste. Marie, compris entre les rues du Cirque, St. Paul, Hevia, et la propriété de Jacob Moquin, ayant cent huit pieds de face sur la première, autant sur la seconde, et sept cent vingt pieds sur chacune des deux autres limites;" and further describes it as the same property purchased at the Sheriff's sale, under the execution

EASTERN  DIS.
*May*, 1841.

HARMAN'S
HEIRS
*vs.*
O'MORAN ET AL.
issued in the suit of Richet & Co. vs. Gravier.   Several witnesses prove, that Harman took possession of all the ground between Hevia street and Moquin's fence, and enclosed it, which enclosures were kept up by his agent, sometime after he left the State, who also rented out the property.   There is no evidence to show, that Gravier ever possessed or claimed the property after the Sheriff's sale in 1816.

The first question is as to the validity of the Sheriff's sale. It may now be considered as the settled opinion of this court, that whenever a judgment, execution and sale are produced, it is sufficient to convey the property, unless such error or fraud is pleaded and established, as will set aside sales in ordinary cases.  16 La. Rep. 433; Ibid. 547; and the authorities cited in those cases.   In this case we have a petition, asking an order of seizure and sale, a regular affidavit, the act of mortgage attached, the order of the Judge, and notice to defendant; then follows an answer or opposition, and another order of the Judge ; after which there appears to have been a trial and judgment regularly rendered, in consequence of which the order of seizure and sale was continued ; a sale took place, and a deed was made by the Sheriff, who makes a return of his proceedings.   We think it amply sufficient, to divest Jean Gravier of all his rights.   This sale was made in 1816, and Gravier died in 1834; yet there is no evidence, he ever claimed the property or complained of the sale.

Whether the sale includes the ground in controversy, depends upon the remaining question in the case.

The description of the property in the sale from Livingston to Harman, seems to us definite and particular; the previous descriptions in other acts conform so nearly to it, there cannot exist a doubt as to the identity.   In all those acts specific boundaries are given, viz: from Chesneau's boundary to that of Moquin, which is a sale *per aversionem*, or a sale from one fixed boundary to another, which has always been held to include all the ground between the points mentioned, whether the measure be correctly stated or not.   L. C. art. 2471 ;   14 L. R. 497; 3 L. R. 91; 5 N. S. 243.

*Where a judgment, execution and sale are produced, it is sufficient to convey the property, unless such error or fraud pleaded and established, as will set aside sales in ordinary cases.*

*A sale, where specified boundaries are given, is per aversionem, and includes all the ground between the points mentioned, whether the measure be correctly stated or not.*

The witnesses all state, there was a fence on the line between Moquin and the brick-yard; Pilie says, the property was enclosed by Harman's Heirs or their agent by a fence on Hevia and St. Paul streets, connecting it with Moquin's line, on which there was already a fence; and in front on Circus street. Other witnesses speak of this possession and enclosure, or reparation of existing enclosures. We think, the plaintiffs have made out their case.

The judgment of the District Court is therefore affirmed with costs.