THOMPSON<br>v.<br>CHAPMAN.

---

## WILLIAM KEAY v. NEW ORLEANS CANAL AND BANKING COMPANY AND H. J. RANNEY.

The plan, by which the vendor sells property, forms a part of the title conveyed by him, and he warrants whatever may fairly be inferred from it.

Suits for damages should not be matters of speculation, but reasonble claims for indemnification.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *A.* and *W. D. Hennen*, for plaintiff. *Hunton* and *Bradford*, and *R.* and *T. G. Hunt*, for defendants. By the court:

PRESTON, J. The plaintiff holds a parcel of ground, by titles derived from the *New Orleans Canal and Banking Company*, being the entire irregular portion of ground, bounded by the New Shelled Road, Solis, Euphrosine and Maunsel streets.

The bank sold the ground in 1845, by a plan made under their direction, exposed by their auctioneer, and deposited for reference with their notary. It is proved by witnesses, that a sale by a plan, must give effect to everything apparent on the plan. The Civil Code also provides, that equity, usage and law, supply such incidents, as the parties may reasonably be supposed to have been silent upon, from a knowledge, that they would be supplied from one of these sources. Art. 1959. We consider, therefore, that the plan by which the plaintiffs sold the property, formed a part of the title conveyed by them, and that they warrant whatever may fairly be inferred from it.

KEAY
v.
NEW ORLEANS
CANAL AND
BANKING Co.

The plan exhibits a vacant space in front of the property marked "shelled road," and the title made to the original purchaser, calls for a "front on the shelled road."

In 1849, the defendants excavated a canal twelve feet wide and five feet deep, within three feet of the entire front of the plaintiff's property. They extended it several hundred feet above and below his property.

The plaintiff complains of this canal; that it is an unauthorized nuisance established by the defendants, greatly detrimental to his property; alleges that he has suffered five thousand dollars damages, for which he claims judgment; and demands that the nuisance be abated, by compelling the defendants to fill up the canal.

He asserts a right to a sufficient space in front of his property, for a banquette and gutter, and pray for all relief that equity and the circumstances may require.

The defendants plead and contend, that by the 14th section of their charter, they were bound to construct a suitable draining canal on the upper side of their shelled road; that the canal they have constructed, was thus required by their charter, and necessary for the public; they specially deny the right of the plaintiff to any space for a banquette and gutter, and, generally, the danger and damage of which the plaintiff complains.

By constantly bearing in mind the article of the Civil Code quoted, and the principle to which we have alluded, the pretensions of both parties will be much abated.

The plaintiff shows the plan, which exhibits the entire front of his property, as bounded by a shelled road, and produces the deed from defendants, which calls for a front on the shelled road, and claims that the shelled road should come to his line, leaving only a space for a banquette and gutter.

The act of the Legislature, incorporating the Canal Bank, imposed upon it the obligation of constructing a levee on the upper side of the canal, and to lay out a road not less than twenty-five feet wide along the whole line of the canal, and to cover the same with sand, shells, and other hard substance, with a suitable draining canal on the upper side thereof.

Such a road having been constructed by the defendants, nothing more can be required from them under their charter. Can more be required by their plan and bill of sale? The charter required that a space of one hundred and twenty feet on each side of the canal, should be left to the State at the expiration of thirty-five years from the passage of the act of incorporation. The plan indicates that this whole space should be left open, but when taken in connection with the charter, we do not think it imposed the obligation of converting the whole of it into a shelled road. The true interpretation of the charter, plan and deed of sale, all taken together is, that a vacant space of one hundred and twenty feet between the plaintiff's property and the canal, should be left open for the purposes of commerce and public utility, and that a shelled road at least twenty five feet wide, should be left clear for a passage through this open space. They give the plaintiff a front towards the shelled road, a right of view upon, and open access to it.

It is clear from the evidence, that the defendants, in point of fact, filled up and widened the shelling of the vacant space between the plaintiff and the canal, to increase and facilitate the landing and growing commerce, and not for the purpose of a road. They had a right to use the vacant space for both purposes, as far as consistent with the rights of the plaintiff, which we will now examine.

We are of opinion, so far as the defendants are concerned, without saying
anything as to the rights of the State, that the plaintiff is entitled to the space
necessary for a banquette and gutter in front of his property. In laying off
large portions of ground within the limits of the city into squares and streets,
to be sold in lots, universal usage establishes an understanding and tacit con-
sent, that a banquette and gutter is to be made on the vacant space left in front
of the squares for streets or other access, and so marked on the plans, and the
vendor can never afterwards use that space, even for public much less his indi-
vidual purposes, in a manner inconsistent with the dedication for a banquette and
gutter. There can be no access without a banquette ; there can be no healthful
cleanliness without a gutter.

The evidence establishes, that three feet are necessary for a gutter at that
distance from the river, and that the banquettes, in the city, are from eight to
twelve feet in width. We will adopt the medium of ten feet for the banquette,
and three feet for the gutter, until the city authorities establish both by ordinance,
as it is their right and duty to do.

With thirteen feet in front of the plaintiff's property, we think the defendants
have no right, under their plan and sale, to claim an exclusive use, or any use,
inconsistent with the municipal purposes we have mentioned.

Had the defendants the right to dig a canal twelve feet wide and five feet deep,
within three feet of the plaintiff's line ? They contend, that they were obliged
to do so by the 14th section of their charter, which required them to make a
suitable draining canal on the upper side of their levee and shelled road. They
were exempted from that duty, by the 1st section of an act approved the 16th
of March, 1848 ; moreover, a suitable draining canal at that part of their property,
would be one sufficient to carry off the water coming down the street, parallel
to the upper side of their shelled road, and not the canal, originally intended by
the Legislature, to carry off, through the Metarie Ridge, the rain and transpira-
tion water, from a surface fronting eight or ten miles on the Mississippi river,
and extending back to the canal. It is proved, that a gutter three feet wide
is sufficient for draining purposes in front of the plaintiff. The defendants were
not, therefore, bound to the State to dig the canal in controversy, and by their
sale and plan, we have seen, had no right to construct it for their individual pur-
poses, at least, within thirteen feet of the plaintiff's front ; no man would have
purchased at their sale, without a space in front for a banquette and gutter, or,
with the belief, that they might establish a nuisance within three feet or less of
his door. We concur therefore with the district court in the opinion, that the
canal dug by the defendants in front of the plaintiff's property, should be filled
up at their expense.

We see no reason in this case for imposing vindictive damages.

The district court was of opinion, that the defendants dug the canal merely
to obtain the dirt for the purpose of filling up their widened landing. The plain-
tiff also endeavored to prove, that it was done from the malice of an agent of the
bank, against a former proprietor of the plaintiff's ground. The evidence does
not sufficiently establish, to our minds, either position. On the contrary, we are
inclined to think, the defendants believed they had the right to dig the canal,
and that its construction might be useful. Even if it was dug for the dirt alone,
to widen and fill up the landing, that improvement has and will prove beneficial
to the plaintiff.

The plaintiff complains of an unnecessary elevation of the embankment and
road in front of him. The Legislature required the defendants to construct a

KEAY
*v.*
NEW ORLEANS
CANAL AND
BANKING CO.

KEAY
v.
NEW ORLEANS
CANAL AND
BANKING CO.

levee sufficient for protection from overflow, in the event of the river breaking through the levee at any point above. Engineers are of opinion, that the present height of the embankment and road, was necessary for that purpose.

The danger of the children of persons tenanting the plaintiff's house, falling into the canal with peril to their lives, is urged as a leading motive for damages. The plaintiff lives on the other side of the lake. His tenant proves there is no serious danger of the misfortunes feared.

The plaintiff greatly complains of the obstruction of the access to his premises, from the shelled road and landing. The ground, immediately in front of his property, was very low before the canal was dug. The defendants were not obliged to fill it up; so that much obstruction always existed. Half the damages allowed by the district court, would have enabled the plaintiff to have bridged his whole front, and thus to have avoided the obstructions and dangers of which he complains.

Although it is proved, that the property of the plaintiff is temporarily deteriorated in value by the canal, yet that is to be remedied by filling it up. We do not believe he wished to sell his property, for he was offered, notwithstanding the nuisance, a third more than he gave for it but two years before. The only damage he can suffer, is the temporary inconvenience of the canal, from the time he put the defendants in default by this suit, commenced in April 1851, until he can compel them to fill it up under the orders of the district court.

Suits for damages should not be matters of speculation, but reasonable claims for indemnification; and, as in this case, we believe that each party has only exercised and asserted what they believed to be their rights, we think five hundred dollars would be an ample indemnification for all the damages the plaintiff has suffered, in consequence of the errors committed by the defendants, including the trouble and expense of establishing his right to have it abated.

As to the filling up the canal at the expense of the defendants, the judgment of the district court is affirmed. The defendants are further enjoined from interfering with thirteen feet of the space in front of the plaintiff's property, the same to be reserved and subject to the disposition of the city authorities, for a banquette and gutter. The judgment for damages is reversed, and reduced to five hundred dollars, which the defendants are condemned to pay, with costs in the district court; and it is decreed, that the plaintiff pay the costs of the appeal.