Statement of the Case.
NICHOLLS, C. J.
The plaintiff alleged: That one Jehiel Brooks, being then owner of what was known as the “Grappe Reservation,” in the parish of Caddo, sold to E. Carroll a tract of land therein containing 219.07 acres, as per deed in Book G of the Records of Caddo parish. That said land was particularly described in a map of same by Hailey Watts, recorded in same book, page 255, on file and of record in the clerk’s office in said parish, which map was in accordance with a survey made of said land by said Watts, a survey or field notes of which were by him given on said map. That subsequently Carroll sold 40 acres of said land, more or less, to one Auld. That the remainder of said land was again surveyed by Watts, surveyor, and divided into seven lots, as shown by a map thereof, and field notes thereof recorded in Conveyance Book S of the Records of Caddo parish.
That these seven lots were sold in 1871, in the succession of Carroll, according to said map, to different parties, and ultimately by different conveyances became the property of the defendant, Hiram Eorbing.
That the lands bounding the lands sold by Brooks to Carroll at all points except on the west were lands embraced in the Grappe reservation, which at the time of the sale to Carroll were owned by Brooks, and were subsequently acquired from him by J. R. J. Daniels, together with other lands in said reservation, aggregating 10,000 acres, more or less, which lands were sold at a succession sale in his succession in 1871 and 1872. That these lands were, in conformity of the then existing constitution of Louisiana, sold in small subdivisions, containing each not more than 40 acres, under a survey made by Watts, surveyor, as shown by map of same recorded in Conveyance Books S and T of the Records of Caddo parish. That at said sale lots 8 and .9, section 22, township 16, range 13, were purchased by-, who sold to Hoss, from whose heirs or assignees plaintiff acquired the same as per the recorded map of the Daniels lands, and still owned the same. That he also owned lots 12, 13, and 14 of section 23, lots 4 and 5 and 6 of section 25, and lots 1, 2, 3, 4, 5, 6, 7, and 8 of section 26, and lot 1 of section 27, of said township and range, as per said maps of the Daniels land.
That he (plaintiff) owns the lots and lands adjoining same by purchase from the succession and heirs of said Daniels and from the succession of J. H. Gandy.
Plaintiff alleged that the boundaries between said lands were unsettled, and the same should be definitely settled. He prayed for citation on defendant, and that, after due proceedings had, and surveys made according to law, the said boundaries be ascertained and determined and established by judgment of the court, and that all orders and decrees necessary in the premises be made.
After some intervening proceedings, not necessary to refer to here, defendant answered, pleading first the general issue. He admitted himself to be the owner of the property mentioned in plaintiff’s petition, and averred that he was the owner of all the land purchased by one E. Carroll from J. Brooks as per deed recorded in Conveyance Book G, page 271, of the Records of Caddo parish, except that owned by J. H. Lucas.
He alleged that the boundaries of all the lands mentioned in plaintiff’s petition had been settled by agreement, which had been filed in the suit, except as to the boundaries of the Carroll tract, referred to.
In 3851 Jehiel Brooks, the owner of a large tract of land in the parish of Caddo, known *223 as the “Grappe Reservation,” sold to Elias Carroll a portion of said tract, the part so sold being represented to contain 219 and a fraction acres.
Hailey Watts, a surveyor of that period, was engaged to survey and plat the land so bargained to be sold to Carroll.
This he did, and his map is extant, and was filed in. evidence in the case. Appended to the map are field notes of the survey.
Subsequent to his purchase, Carroll sold 40 acres of the land to Auld. The remainder he owned at the time of his death, which occurred in 1870 or 1871.
His succession was opened in Caddo parish, and in 1871 the land he had bought from Brooks, save that conveyed to Auld, was sold at succession sale.
The constitution of 1868 was then in force, and one of its requirements was that lands offered at sheriff’s or succession sale should be subdivided, and sold in 40-acre tracts, or less. In compliance with this provision, the Carroll lands were subdivided, and the subdivision was the work of the same surveyor —Watts—who had first platted the land in 1851.
In this subdivision Watts returned the land (excluding that sold to Auld) as containing 183 acres, which he subdivided into seven lots, and'these lots were purchased at the succession sale by parties who subsequently sold to Boynton, and the latter to Eorbing, defendant herein.
The allegation of plaintiff’s petition is that the land so sold as above by Brooks to Carroll was bounded on all sides, except on the west, by the remaining lands of the Grappe reservation, and that these remaining lands, aggregating about 10,000 acres, were, subsequent to the date of the sale to Carroll, acquired by J. R. J. Daniels from Brooks.
Daniels died, and the lands so acquired by him were sold at his succession sale in Caddo parish in 1871 and 1872, being first subdivided into tracts of 40 acres or less, agreeably to túe constitution, and sold in lots as per such subdivision.
Hailey Watts was the surveyor who made the subdivision and platted the lands for the sale thereof in 40-acre tracts.
His map, or a copy thereof, was filed in evidence in the case.
The plaintiff, Leonard, was a purchaser at said sale, and subsequently bought from parties, who were likewise purchasers, their holdings, so that at the time the present suit was instituted he (Leonard) was the owner of by far the greater part of the land which Daniels had acquired from Brooks, and which had been sold in 1871 and 1872 at the Daniels’ succession sale.
He avers that his holdings of the Daniels lands makes him the contiguous proprietor to the Carroll lands, owned by the defendant, Eorbing, and that there is dispute between him and Forbdng as to the true boundary of the Carroll tract.
The object of the suit, therefore, is to fix the boundary between the Carroll lands, owned by Eorbing, and the Daniels lands, adjoining, owned by the plaintiff.
Defendant’s answer denies that the plaintiff owns any land adjoining the Carroll tract, except on one side, and that the boundary between him and the respondent on that side is a water course called “Tarkiln Bayou,” as shown by the deed to defendant from Brooks, prior owner of the Daniels lands. It is averred that this bayou is a natural and fixed boundary, and that no survey was necessary to establish the same.
The trial court appointed two surveyors to survey the Carroll tract and make a report. Hailey Watts was long since dead.
The surveyors appointed made then- report. Evidence was adduced, and the district judge, in a written opinion, sustained-the contention of the defendant that the water course known as “Tarkiln Bayou” and its connection, now known as “Auld’s Lake,” formerly called “Tar Bayou or Slough,” constitutes the boundary of the Carroll lands on the east and north, and that defendant took all the lands on the east and north up to said water courses.
In an application for new trial plaintiff averred newly discovered evidence of material character, pointing out what it was; and on this showing, and because of an error of fact made in his opinion, the trial judge granted the application and ordered a new trial.
He appointed two additional surveyors to survey the Carrol! tract and make report, and this was done, and a second trial was had, the result of which was that in a second written opinion the district judge still maintained the contention of the defendant that Tarkiln *225 Bayou and its connection, Auld’s Lake, marked the true boundary on the east and north of defendant’s holdings.
Plaintiff appeals.
Opinion.
In the act of sale from Jehiel Brooks to Elias Carroll in August, 1851, the description of lands is given as follows:
“Beginning at the place where the west line of the Brooks claim crosses the line dividing sections Nos. 1G and 22, T. No. 16, of R. No. 13 west, and running down the said Brooks’ line to the east and west open line of said section 22; thence east to Tarkiln Bayou, and up said bayou to Pine Branch, to the place of beginning, dividing secs. 1G and 22, — for a more general description of which reference is had to a plat of a survey of said land made by H. Watts on the 19th of March, 1851, which is recorded in the of fice of the recorder of mortgages of the par' isli of Caddo. Said tract of land contains two hundred and nineteen o^/ioo acres, more or less. It is understood and agreed herein that all the overflowed lands in the foregoing survey, amounting in acres to about one hundred, are included in this act of sale.”
The Carroll lands, owned by the defendant, are mainly in the Caddo hills, which border the river bottom; but the description given above shows that the lands thus acquired by Carroll were not all hill land, — that a considerable portion of the tract (some hundred acres) was overflowed lands.
Pine Branch, referred to in the description given, is a small stream or creek coming down from the hills and emptying into Tar-kiln Bayou in the upper reach of the latter stream.
The description in the deed from Brooks to Carroll calls for a water boundary from the southeastern corner of the land conveyed to Carroll northward and westward to Pine Branch. The latter flows in a northeasterly direction to Tarkiln Bayou, and therefore forms the northwestern boundary of the Carroll lands, owned by defendant.
The map made by Hailey Watts in March, 1851, — a few months prior to Brooks’ sale to Carroll, — and by which map and description Carroll bought, shows a water boundary all the way from the southeastern corner of the tract Carroll intended buying and did buy northward and westward to Pine Branch; that is to say, both the deed and the map show the tract of land Watts surveyed for Carroll to be bounded on the east and the north by a water course, and that the line extended up such water course to Pine Branch, and then up the latter to the west or back line of the original Grappe reservation.
Watts’ map calls this water course “Tar Bayou.” The deed calls it “Tarkiln Bayou.”
All the surveyors appointed by the trial court to run the lines of the Carroll tract reported it was impossible to follow the field notes which Watts appended to his map; that the lines could not be made to close by fol-' lowing same; that an attempt to follow the notes resulted in an impossible survey, — the line to the eastward crossing Tarkiln Bayou, and then recrossing it, and finally ending far out in Auld’s Lake; and the line to the westward -carrying them back through the center of the Carroll tract, and crossing the westward or back (back from the Red river) line of the Grappe reservation, and ending on land to the southward that could not possibly be any part of the Carroll tract.
So all of them discarded the field notes and reported surveys and accompanying maps showing what, in their opinion, were the true boundaries of the tract.
Two of them — Jenkins and Williams — hold to the opinion that in 1851, when Watts made his survey, there was another bayou, which made out from the present Tarkiln Bayou, at the point where Pine Branch runs into it, and which followed the foothills in a contour going eastward and southward, and that this was the water course which Watts meandered when he surveyed the lands Carroll was then about to buy from Brooks, and which he dubbed on his map “Tar Bayou.”
The other two — Crawford (who is the parish surveyor) and Wilson — do not hold to this idea of two bayous extending eastward and southward from the mouth of Pine Branch, one called “Tarkiln Bayou,” and flowing eastward to and into Bayou Pierre, and the other following the foothills as above, and called “Tar Bayou.”
They found no sufficient evidence of any other stream having been there than the one now flowing to the eastward, and called “Tar-kiln Bayou,” and its connection to the south *227 ward, near Bayou Pierre, called “Auld’s Lake.”
Crawford, however, says that the fine which Jenkins and Williams adopted as being- the center of the supposed former prong of Tarkiln Bayou, which prong they (Jenkins and Williams) think shows on Watts’ map as Tar Bayou, would have been the line deputy United States surveyors would have run if they had been surveying along there meandering the lake. He states his opinion as to this is predicated on the theory that a regular United States deputy surveyor would have run a line along the brow of the hills, separating the hills from the bottom lands. Pie does not give his adhesion to the line so run as being the eastern and northern boundary of the Carroll tract.
On the contrary, he and Wilson, the fourth surveyor, sustain the contention of the defendant that the northern boundary of the tract is Tarkiln Bayou as it now appears on the maps, and the eastern boundary is Auld’s Lake and its upper connection with Tarkiln Bayou near where the latter flows into Bayou Pierre, the latter bayou being the main stream draining that country between the hills and the Red river.
Between the line that Jenkins and Williams sustain (as being the eastern and northern line of the Carroll tract) and Tarkiln Bayou and Auld’s Lake are some 40 or 50 acres of land, — bottom or alluvial land, — and it is over this that the present controversy is waged.
Plaintiff claims it as purchaser of the Daniels lands.
Defendant claims it as included within the boundaries of the Carroll tract, which tract was first sold; that is to say, Brooks, who owned all the lands constituting the Daniels tract and the Carroll tract, sold to Carroll before he sold to Daniels.
Defendant is in possession, and has the 40 acres, or part of it, cleared and in cultivation.
Before the levee system in that part of the Red river country was completed, these lands and all the contiguous back lands in the river bottom overflowed each year, and at that time little or no value attached to them. But now, with the levees completed, the lands have been reclaimed, and are worth $40 or $50 per acre.
To win his suit, plaintiff must sustain his contention that the present Tarkiln Bayou, and its connection, Auld’s Lake, did not, in 1851, constitute the water course shown on the Watts map as bounding the Carroll tract on the east and north, and that there was at that time another bayou, making out of the present Tarkiln Bayou at the mouth of Pine Branch, and running eastward and southward, which Wa.tts called “Tar Bayou,” and made the boundary of the tract.
As heretofore shown, the deed from Brooks to Carroll called for a water boundary to the tract from its southeastern corner to the mouth of the Pine Branch, and also called for about 100 acres of overflowed land as belonging to the tract.
According to this deed, the line was to run from its starting point eastward, to Tarkiln Bayou, and up that bayou to Pine Branch.
Plere, then, was a natural, visible, fixed boundary that Carroll and his assigns are entitled to go to, and they take all the lands within the limits so fixed without regard to the quantity.
Watts estimated the quantity at 219 and a fraction acres; Jenkins and Williams calculated, within the lines they adopted, 856 and a fraction acres; and outside of then- northern and eastern line, and between the same and Tarkiln Bayou and Auld’s Lake, are some 40 or 50 acres more.
Much testimony was adduced by irlaintiff in support of the theory of a second bayou, which Watts named “Tar Bayou,” but, with the district judge, we are of the opinion the preponderance of the evidence is against it.
This bayou, if it existed, is claimed, as above stated, to have run along the edge of the hills from the mouth of Pine Branch in an eastwardly and southwardly direction, and it was on this bayou that plaintiff claims Watts established the southern eastern corner of the Carroll tract.
I. W. Pickens, an old resident of the parish, testifies he has known the country in that section for 50 years, and that the water course known as “Tarkiln Bayou” and its connections are about the same now as they were 50 years ago. He further testifies that he never knew or heard of a second bayou that made out of Tarkiln Bayou at the mouth of Pine Branch and skirted the foothills going eastwardly and southerly, as contended for by plaintiff. He says that when he first *229 knew the country there was a connection, just as there is now, between Tarkiln Bayou and the sheet of water or water course then ¡mown as “Donovan’s Lake,” now known as “Auld’s Lake,” and that this connection was then, called “Tar Slough,” and through it water flowed from Tarkiln Bayou to the lake. He narrates a circumstance which impressed upon his mind the recollection of this. It was as follows: His father dying in 1852, he had occasion, at the time of his death, to go to his uncle’s, and in doing so had to cross the slough known as “Tar Slough,” and it was up, — was full of water, — and he had to swim it.
A. IP. Mahle, another old resident of the parish, testifies he has known the country in question since 1847, and he states his recollection to be that the slough, which then and now connected Tarkiln Bayou with Donovan’s or Auld’s Lake, was known as “Tar Slough.” He had always heard it called by that name, and its location was the same 18 years ago as it was in 1847 and 1850, and is now. He further testifies of the nonexistence of any second bayou issuing from Tarkiln Bayou at the mouth of Pine Branch and skirting the hills. He never knew or heard of such a bayou.
As to these witnesses (Pickens and Mahle), the. district judge tells us they are men of standing and respectability.
What were known in 1851 as “Tarkiln Bayou,” “Tar Slough,” and “Donovan’s Lake,” appear on the Watts map of that period as Tar Bayou. We cannot reject this, and hold that Watts’ Tar Bayou was a bayou then existent, but now obliterated. The question upon which the case turns thus is one of fact, and not of law, and the plaintiff has not sustained the burden of proof, which was upon him, to show that the present Tarkiln Bayou and its connections, Tar Slough and Auld’s Lake, are not the water boundary which Carroll’s deed from Brooks in 1851 called for, and not the water boundary shown on the map of survey of the Carroll lands, made in 1851 by Watts.
A water boundary, given by the water courses named, is there now, and by extending the lines of the Carroll tract to and along the same only some 40 or 50 additional acres will be included.
It is a codal provision of the law that if one sells a tract of land from fixed boundary to another fixed boundary the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title. .Civ. Code, art. 884.
So, too, it is settled that courses and distances must yield to natural and ascertained objects. Wells v. Compton, 3 Rob. 188.
This applies to the erroneous field notes of Watts. Watts was an incompetent draftsman, if not an incompetent surveyor, and his field notes, maps, and plats are not reliable, though even from them plaintiff can derive nothing substantial to sustain his contentions.
Judgment affirmed.