On Motion to Dismiss.
PROVOSTY, J.
Motion is made to dismiss on the grounds, first, that an appeal cannot be taken by motion in open court after the expiration of 10 days from signature of judgment, and that this appeal was so taken; second and third, that there was no order of appeal and no citation.
What is meant by there being no order of appeal, we do not understand, since we find that the appeal was moved for and granted in open court. Citation being unnecessary when the appeal is taken by motion in open court at the same term at which the judgment is rendered (articles 573, 574, Code Prac.), there naturally was no citation.
The only question is as to whether the delay for taking an appeal by motion in open court is limited to 10 days. The motion was made in this case 30 days after signature of judgment. We think that the intendment of article 117 of the Constitution and Act No. 163 of 1898, p. 320, taken together, is that the terms of court must be of at least 10 consecutive months each year. Succession of Hoyle (No. 14,344, recently handed down) 33 South. 625.[1] The appeal, therefore, was taken at the same term of court at which the judgment was rendered, and, as a consequence, the motion to dismiss must be overruled.
On the Merits.
Plaintiffs bring the petitory action to recover lot 3 of section 2, T. 11, R. 12, parish of Iberville, a tract of about 125 acres of swamp land, forming the rearmost part of the Forrest Home Plantation of the defendant; if, indeed, it be part of the plantation, which is the question in the case. They sue in their quality of widow and heirs of John H. Randolph, from whom defendant’s authors *422 acquired. The question is whether, when Randolph sold the plantation to the authors of defendant, this lot 3 was included in the sale. There were two acts passed for the purpose of evidencing the sale. The second was declared to be for the purpose of correcting the errors of the first “as to boundaries, quantity of land, and location.” The act recites as follows: “Now, therefore, the said appearers, with a view to correcting the errors in said act, do hereby declare that the proper description of the said plantation should be and is as follows:” and they proceed to describe the plantation by boundaries, and also according to the subdivisions of the United States surveys, and to give the area in acres. In the first act the description had been only by boundaries, not by subdivisions of government surveys, and the area had been given by arpents, instead of acres. This area had been said to be “about 2,554 arpents, more or less.” In the second act it was said to be 2,346.97 acres. In the specification of subdivisions according to government surveys in the second act lot .3 is not mentioned, and plaintiffs argue from this that the object of the second act was to leave out this lot 3, which, by the boundaries specified in the first act, had been included. There would be very great force in this contention if in the second act the parties had not adopted precisely the same boundaries as in the first. But while it is conceivable that an oversight might have occurred in the enumeration of the subdivisions, it is inconceivable that Randolph should have given the land of Balthazar Rills for the south boundary if he had intended that his own land should constitute this boundary. We think the object of the second act must be sought for elsewhere than in the leaving out of this lot 3; and wé shall discover it if we observe, in the first place, that by the first act the plantation is described as two tracts of land, instead of as one; and that the south boundary of one of the tracts is not fixed, but is left to be located wherever the allowance of the number of arpents called for by the act will place it; and that, to add to this uncertainty, this number of arpents is not definitely specified, but is said to be “2,-200 arpents, more or less, including section 91, T. 11 S., R. 12 E.”; and if we observe, in the second place, that the specification of area in the description of the second tract is susceptible of the construction of referring to the second tract alone, and in that case is excessive by some 2,000 odd hundred acres.
The description of the first tract is as follows: “A certain plantation, containing 35 arpents, in front on Bayou Goula, by the depth and shapes thereunto belonging, but a sufficient surface so as to give 3,200 arpents, more or less, including section 91, T. 10, R. 12, bounded west by land of P. O. Hebert and Andre Mailles and east by lands of P. Q.- Hebert and estate of A. M. Cropper.” No south boundary is given. That boundary is left to be located by placing it “so as to give 2,200 arpents, more or less, including section 91, T. 10, R. 12.” After having thus described the one tract, the act proceeds to describe the second as follows: “Also all that portion of section 2, T. 11 S., R. 12 E., bounded west by section 3, belonging to the vendor, east by land of A. M. Cropper, and in the rear by land of Balthazar Rills; the whole supposed to contain 2,454 arpents, more or less.” The words “the whole” meant, according to the intention of the parties, the two tracts together, but according to the context of the act it meant the second tract alone, thus giving, according to the letter of the act, some 2,000 odd hundred acres too much. The words “the whole” would not have been susceptible of this construction if the area of the first tract had not been given separately, or if the area of the second tract also had been given separately. “The whole” would then have referred obviously to the whole of the property embraced in the act, but in the act as written “the whole” is susceptible of the construction of referring exclusively to the second tract. Exactly what was meant by “error in location” is not very manifest. Perhaps the parties apprehended that an exact measurement might leave a space between the two tracts, and thus the lands be located as two tracts, when in fact but one. We dare say the main purpose of the second act was to change the unit of measurement from arpents to acres. It not unfrequently happens in our state that the word “arpent” is used when “acre” is meant; whereas there/x is a considerable difference between the two/ the arpent being of 192 feet, and the acre of 209 and a fraction. In all probability this land had never been surveyed by arpents, *424 and tlie use of that term in the first act had been an error.
The record leaves no doubt whatever that Randolph understood lot 3 to form part of his Forrest Home Plantation, and that the plaintiffs, until recently, were under the same impression. In 1872 — seven years before the sale to defendant’s author — Randolph sold the plantation by a description according to government surveys, apd in the sale included this lot 3. He sold it then as the Forrest Home Plantation, just as afterwards to defendant’s authors. In 1874^-five years before the sale to defendant’s authors — he reacquired the plantation with this lot 3 forming part of it. His sale to defendant’s authors was of the Forrest Home Plantation, and by the same boundaries. Exclude this lot 3 from the plantation, and the land of Balthazar Rills, which in all the acts is stated to be the south boundary, becomes separated 'by half a mile.
The lot 3 in question is part of section 2, and is hounded west by section 3. Sections 2 and 3 are contiguous, and on the same parallel, section 2 being east, and section 3 west. In the first act, and also in the corrected act, section 3 is given as belonging to the vendor, Randolph, and as being one of the lands bounding Forrest Home Plantation on the west. Now, shortly before filing this suit plaintiffs sold section 3, and gave Forrest Home Plantation as its east boundary, thereby showing that their impression was that this lot 3, part of section 2, was included in the Forrest Home Plantation. Had they not been under this impression, they would have given Forrest Home Plantation as forming only part of the east boundary, and would have given this lot 3 as forming the other part. As a matter of course, this recital in a sale of other lands to other parties does not operate as an estoppel, hut it serves as an indication of what the understanding of the plaintiffs has been heretofore in regard to lot 3 being part of Forrest Home Plantation.
We conclude the leaving out of lot 3 from the corrected act was the result purely of inadvertence.
The area of that part of the plantation situated in T. 10, R. 12, is not shown by the record, except by the vague statement “about 2,200 arpents, more or less”; hence the court does not know positively that by the description according to boundaries a greater area is conveyed than that specified in the corrected act, viz., .2,346.97 acres. But, if a greater area was conveyed, the legal situation is not changed, since the sale was of the Forrest Home Plantation, such as it was understood to he, and the'record leaves no' doubt that it was understood to include this lot 3. The sale was per aversionem. Davis v. Millaudon, 17 La. Ann. 97, 87 Am. Dec. 517.
The argument that the sale is not by boundaries because the western boundary is given as land of vendor, and between the two< tracts there existed no material demarcation, the locality being nothing more than an expense of swamp woodland, is without force. The land sold is said to he hounded on the west by section 3. This was a definite boundary; as much so as the boundaries to the south and to the east. Doubtless these lands to the south and to the east were part of the same expanse of swamp woodland, with boundaries not otherwise delineated than by the government surveys.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs in both courts.

 109 La. 623.