McBRIDE, Judge.
This action was commenced as one for slander of title but was converted into a petitory when each defendant alleged itself to be the owner of the property. The property in contest is part of a square of ground bounded by Washington Avenue, South Galvez, South Miro and Toledano (formerly Upperline Avenue) Streets. The said square has been variously numbered 65, 77, and presently is No. 455, Fourth District of New Orleans. The disputed property has a front measurement of 18'4'T"' on South Galvez Street, with a depth of 123'0"4'" on the side separating it from Lot 1, a depth and front on Toledano Street of 122T1"1'", by a width in the rear of 19'4"5'".
To state the issues simply, plaintiff is in possession and claims ownership of the property; he alleges that Warren Realty Company, Inc., and the City of New Orleans are slandering his title and are laying claim to the property; that under date of May 8, 1952, Warren Realty Company, Inc., caused to be filed in the Conveyance Office for the Parish of Orleans an ex parte decía- *739 ration of its pretended ownership styled “Notice of Ownership of Real Estate”; that said defendant claims to have acquired its right of ownership by reason of the fact that it had bid the sum of $1,400 for the said portion of land at a public auction held by the City of New Orleans on April 2, 1952; that the said inscription on the Conveyance Records is null and void and should be ordered cancelled; that the Register of Conveyances for the Parish of Orleans should be joined and cited as a defendant. Several former owners of the property, as warrantors, are also impleaded as defendants, but these need not be named here.
Plaintiff’s prayer is that the Warren Realty Company, Inc., and the City of New Orleans be ordered either to disclaim any interest whatsoever in the property or to assert whatever interest they claim to have therein; he further prays that there be judgment decreeing him to be the sole owner of the property and ordering the Register of Conveyances to cancel and erase from the records of his office, and particularly from Book 581 folio 694, the “Notice of Ownership of Real Estate” filed by Warren Realty Company, Inc.
The City of New Orleans answered denying that the Warren Realty Company, Inc., ever acquired any rights in the property. The answer further alleges that the City owns the property. The City’s prayer is that its ownership be recognized and that the declaration filed by Warren Realty Company, Inc., in the Conveyance Records be decreed to be null, void and of no effect and- ordered cancelled.
Warren Realty Company, Inc., first filed a plea of estoppel which was overruled. In answer it set forth its claim of ownership and prayed for judgment decreeing it to be the owner of the property and for further judgment ordering the City of New Orleans to accept the price thereof, to-wit: $1,400, which is the amount bid for the property by Warren Realty Company, Inc., at the public sale held by the City.
The case was tried and judgment was rendered in favor of the plaintiff against Warren Realty Company, Inc., and the City of New Orleans recognizing him to be the owner of the disputed property; the judgment commanded the Register of Conveyances of the Parish of Orleans to cancel and erase the inscription of the “Notice of Ownership of Real Estate” filed by Warren Realty Company, Inc. The City of New Orleans and Warren Realty Company, Inc., have appealed.
Square No. 455, Fourth District of New Orleans, as the square in question is now designated, was formerly the property of John McDonogh and was part of the lands bequeathed by him to the cities of New Orleans and Baltimore. On May 10, 1859, these municipalities conveyed the said square to B. F. and J. Lotspeich, predecessors in title to plaintiff, designating it as Square No. 77 bounded by Washington Avenue, Miro Street, Galvez Street and Upper-line Avenue (now Toledano Street), as shown on a plan of L. H. Pilie, surveyor.
In all subsequent transfers up to and including the sale made by William L. Weil to Widow Joseph Ernst, on August 15, 1905, the square was sold as a whole and the plan of L. H. Pilie, surveyor, was consistently referred to in describing the property in each act. It was not until after the death of Mrs. Ernst in 1919 that an actual subdivision of the square was made. The property was partitioned by licitation by her heirs and Joseph Ernst became the adjudicatee of Lots 1 and 2 of Square 455. He sold these lots to Sarah F. Henderson on February 20, 1923. Miss Henderson subsequently died and by judgment rendered on July 24, 1945, in her succession proceedings, Emilie Magnin, as legatee, was sent and placed into possession of said Lots 1 and 2 under the following description;
A Certain Lot of Ground, together with all improvements thereon in the Square bounded by Washington Ave., Miro, Galvez and Toledano Streets designated as Lot 1 on a plan by W. J. Seghers, Deputy City Surveyor, dated May 13, 1920, annexed to an inventory taken by H. L. Loomis, Jr., Notary *740 Public, on May 26, 1920, according to which said lot measures twenty-nine feet, eleven inches, one line (29/ll"l///) front on Galvez Street, one hundred twenty-three feet, four lines (123'4"') on the side towards Toledano St., eight feet, eleven inches and four lines (8'll"4m) in the rear and one hundred twenty-one feet, four lines in depth (12F4"') on the side line towards Washington Avenue, dividing it from Lot 2, together with all surplus between the side line and the actual street line of Toledano Street, and also a certain lot with all improvements in the same district and square as above described property and adjoining the same and designated as Lot 2 on the above referred to plan of Seghers and according thereto said lot measures thirty feet (30') front on Galvez Street by one hundred twenty-one feet and four lines (12V4"') between equal and parallel lines.
It thus appears that Emilie Magnin was recognized as the owner of and sent and placed into possession not only of Lot 1 and 2 but also of a certain surplus or excess of ground found by Walter J. Seghers, Deputy City Surveyor, to exist in Square 455, Fourth District, all as shown by him on his plan dated May 13, 1920.
On April 2, 1946, Emilie R. Magnin sold the property which she had acquired by the judgment of possession to Gerson and Rosenberg. The description of the property as contained in this act of sale is made with reference to a survey of J. J. Krebs, Civil Engineer, on March 30, 1946, a plan whereof is annexed to the act, and according to which the surplus or excess ground in the square adjoining Lot 1 was of greater dimensions than found by Seghers in his survey in 1920. Krebs shows the surplus as measuring 18'4"1'" front on South Gal-vez Street, with a depth of 123/0'/4//'’ on its side next to Lot 1,. a depth and front on Toledano Street of 122'H"!'", by a width in the rear of 19'4"5W. Gerson later disposed of his interest in the property to Rosenberg.
On February 17, 1949, Rosenberg sold Lots 1 and 2, together with the strip measuring 18'4'T"' front on South Galvez Street, to Duplessis and wife, and in the act of sale the property was described in accordance with the Krebs plan.
On July 31, 1951, Felix H. Kuntz acquired the property from Duplessis and wife. The description of the property in the act is the same as that contained in the preceding sales made by Magnin, Gerson, and Rosenberg,. except that in addition to Krebs’s plan a plan of the property made by F. C. Gandolfo, Jr., on July 23, 1951, is referred to.
The location of Upperline Avenue (now Toledano Street) as shown on plan of L. H. Pilie, in 1859, later proved to be erroneous. The surveyors who testified in the case unanimously agree that when Pilie in 1859 laid out on his plan the squares of ground which the cities of New Orleans and Baltimore acquired from John McDonogh, he did not make an actual survey in the field and his theoretical estimate of the area within the boundaries was erroneous because it was based on an imaginary projection of then Upperline Avenue. A slight error in the angle accounts for the discrepancy between his measurements and the actual location of Toledano Street. This was only discovered when Toledano Street was extended.
The expert witnesses also all agree that the City Map made by d’Hemecourt, who had been employed by the City of New Orleans, on December 1, 1856, to make “a general plan of the City of New Orleans, as well as plan books, and a general index to the same,” resulted from actual surveys and correctly reflects the location of what was then known as Upperline Avenue. The so-called surplus, or excess in Square 455, involved in this case results entirely from the Tact that d’Hemecourt shows the location of Upperline Avenue to be at a greater distance from Washington Avenue than Pilie did on his plan in 1859. d’Heme-court’s map insofar as it located Upperline Avenue was fully confirmed by Elbert G. Sandoz, Civil Engineer and Surveyor.
*741 The original sale made by the two municipalities of the square of ground bounded by designated streets was clearly a sale per, aversionem and as the vendors sold all the land they owned from one fixed boundary to another, their vendee took all of the land between those boundaries. The Civil Code of 1825, Art. 850 (which is identical with Art. 854, LSA-C.C.) provides :
“If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title.”
When the property is described as being bounded by four streets, the sale is usually considered as being by metes and bounds. Labiche v. Jahan, 9 Rob. 30; Whitney v. Saloy, 26 La.Ann. 40.
It is the accepted rule that a sale by metes and bounds conveys all of the property found within the boundaries given. Johnston v. Quarles, 3 La. 90, 22 Am.Dec. 163; Curator of Grafton v. Wells, 4 La. 534; Harman’s Heirs v. O’Moran, 18 La. 526; Labiche v. Jahan, supra; Keay v. New Orleans Canal & Banking Co., 7 La.Ann. 259; Nichols v. Adams, 9 La.Ann. 117; Ragan v. Gwinn, 19 La.Ann. 133; Leonard v. Forbing, 109 La. 220, 33 So. 203; Randolph v. Sentilles, 110 La. 419, 34 So. 587.
The fact that measurements are given in sales per aversionem does not affect the general rule. Cuny v. Archinard, 5 Mart., N.S., 238; Geiser v. City of New Orleans, 167 La. 347, 119 So. 73; Consolidated Companies, Inc., v. Haas Land Co., 179 La. 19, 153 So. 6.
Whether the measure be correctly stated in the deed or not where specific boundaries are given, the sale is one per aversionem. The designation of the boundaries controls the enumeration of the quantity. LSA-C.C. art. 2495; Barzeale v. Bordelon, 16 La. 333; Prejean v. Giroir, 19 La. 422; Saulet v. Trepagnier, 2 Rob. 357; Zeringue v. Williams, 15 La.Ann. 76; Barrow v. Miller, 16 La.Ann. 114; Surgi v. Shooter, 17 La.Ann. 68; Passera v. City of New Orleans, 167 La. 199, 118 So. 887.
The governing authorities of the City of New Orleans became fully aware of the fact that a serious and irreconcilable conflict existed as to the correct location of Toledano Street as between the plans of Pilie and d’Hemecourt and that this circumstance was causing much' confusion among the owners of property along Toleda-no Street. It appears that on February 27, 1923, the Commission Council of the City of New Orleans adopted Ordinance No. 7299, C.C.S., by which the “plan of D’Hemecourt as confirmed by the survey of Elbert G. Sandoz, Civil Engineer and Surveyor, be and the same is hereby adopted and accepted as indicating conclusively the exact location and measurement of the former Square No. 103, now known as Square No. 472, intended to be sold by the Cities of New Orleans and Baltimore * ifc sfc »
The original Square 103 (now Square 472, Fourth District) like Square 455 is bounded on one side by Toledano Street and is located only three squares away from the property which is the subject matter of the present controversy. While the aforesaid ordinance deals specifically with the fixing of the location and measurements of former Square 103, it has come to acquire a general application and is presently accepted by the leading surveyors as establishing the location of-Toledano Street thrortghout the general area.
It would be most absurd to say that the location of Toledano Street should be fixed in accordance with the d’Hemecourt plan as a boundary of Square No. 472 but that Square 455 and the other squares fronting Toledano Street, which were embraced within the former McDonogh tract, between South Claiborne and Board Streets must be located in accordance with the Pilie plan. The abutting landowners along *742 Toledano Street have undoubtedly improved their property in accordance with d’Heme-court’s location of Toledano Street as was recognized and accepted by Ordinance 7299, C.C.S. d’Hemecourt’s line, as confirmed by Sandoz, has likewise been adopted, accepted, and followed by Sandoz, Gandolfo, Krebs, Stewart, Guy J. Seghers, and other surveyors in making surveys of property fronting Toledano Street. If the Pilie plan were to be applied to the situation the possibility is that this would require practically all boundaries in Square No. 455 and also the front boundaries in the other squares along Toledano Street to be relocated, which, to say the least, would result in utter confusion and bring about chaotic results. The line of Toledano Street would most probably run through, or be so near, many existing buildings as to necessitate their removal or demolition. See Provosty v. Clark, 11 La.App. 147, 119 So. 763, which was a boundary suit in which we discussed an analogous situation.
The Warren Realty Company, Inc., claims that it acquired ownership by reason of its bid of $1,400 for the property at a public sale held by the City of New Orleans. The evidence shows that during the time the disputed property stood in the ownership of Felix H. Kuntz, plaintiff’s immediate vendor, Kuntz unsuccessfully endeavored to have his title approved by a title guaranty company in New Orleans. The title company though Kuntz’s title was suggestive of litigation. Ultimately Kuntz conceived the idea of having the City of New Orleans advertise the property for sale at auction with the expectation that he would become the adjudicatee of whatever rights the City might have and thus clear his title. At the ensuing public offering Kuntz bid $1,300 for the property, but a representative of Warren Realty Company, Inc., was present and entered a last and higher bid for $1,400, which the Commissioner of Public Parks and Buildings of the City of New Orleans refused to accept.
Ordinance 7299, C.C.S., was a formal acknowledgement that Pilie erred in showing the location and boundary of Square 472, and the Commission Council sought to rectify the error by fixing the line of Toledano Street where it should be. This establishment of the true boundary has the legal effect of reverting back to the sale per aversionem made to B. F. and J. Lotspeich in 1859, and the vendees can be said to have taken all of the land between the four bounding streets according to their proper locations. Where one sells a certain quantity of land and afterward fixes the boundaries himself, the purchaser will take all the land between those boundaries. Le Breton v. McDonough, 2 Rob. 461.
The ordinance also is a testimonial that the Commission Council believed that when the cities of New Orleans and Baltimore sold the McDonogh squares in 1859 it was their intention to dispose of all the land in each particular square without regard either to the dimensions shown by Pilie or his locations of the bounding streets. This is important for in determining disputes such as this the court should ascertain, and, if possible, give effect to the intentions of the parties. Administrators of Tulane Educational Fund v. Stair, 148 La. 11, 86 So. 595.
Thus the City of New Orleans had absolutely nothing to offer at the auction sale, and as a corollary Warren Realty Company, Inc., could buy nothing, the sum total of which is that they have no interest to assail plaintiff’s title. By claiming ownership each of said defendants assumed the attitude of a plaintiff in a petitory action and must recover, if at all, upon the strength of their own titles. Baird v. Atlas Oil Co., 146 La. 1091, 84 So. 366.
Our above conclusion renders it unnecessary to discuss the plea of estoppel interposed by Warren Realty Company, Inc., or its plea that there is a non-joinder of parties plaintiff.
The judgment appealed from is affirmed.
Affirmed.