OHIO IRON COMPANY v. AUBURN IRON COMPANY.[1]

May 14, 1896.

Nos. 9821—(40).

**Transfer of Lease—Right of Re-Entry.**

Whenever a lessee transfers and assigns the whole term for which he has leased premises, reserving no reversionary interest whatsoever to himself, the right of re-entry for a breach of a condition subsequent is not reserved or retained. The right of re-entry cannot exist as an independent condition, but only as an incident to an estate or interest for the protection of which it is reserved.

**Same—Estate—Reversion.**

The right of re-entry is not an estate or interest in land, nor does it imply the reservation of a reversion. And, when enforced, the grantor is in through the breach of the condition, and not by reverter.

**Reservation of Rent—32 Hen. VIII. c. 34.**

Conceding that the statute 32 Hen. VIII. c. 34, is part of the common law of this country, it has no application in a case where there is simply a reservation of rent out of an estate for years, without reversion.

**Right of Re-Entry—Assignment.**

The right of re-entry for a breach of a condition subsequent is not assignable before the breach.

[1] Reported in 67 N. W. 221.

Appeal by defendant from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Affirmed.

*Draper, Davis & Hollister*, for appellant.

*Cash, Williams & Chester*, for respondent.

COLLINS, J.  This action was in ejectment, the right of possession of a 40-acre tract of land under certain mining leases being involved.  On the findings, judgment was ordered in plaintiff's favor, and the appeal is from an order denying a new trial.

The material facts are as follows:  February 15, 1892, the C. N. Nelson Lumber Company was, and still remains, the owner in fee of a large quantity of land, including the 40 in dispute.  On that day it executed to A. E. Humphreys a mining lease of these lands for a term of 99 years from March 1.  A royalty upon each ton of ore mined, and the minimum annual output of ore, was agreed upon.  The lease provided that the lessee might assign it, or contract with other parties to work the mines.  He was also to pay all taxes and assessments.  All terms, conditions, and covenants contained in the lease were to run with the land, and to be operative and binding upon all assigns, sublessees, and grantees under the tenant.  The lease contained the usual conditions as to forfeiture and right of re-entry in case of default in any of its terms or conditions.  May 10, 1892, Humphreys executed a lease of part of these lands, including this 40, to the Wyoming Iron Company, containing the terms, conditions, and covenants found in the lease first mentioned.  He thus transferred his whole term, and, although denominated a "sublease," it was, in legal effect, an assignment.  August 22, 1892, the Wyoming Company leased this 40 acres to John T. Jones for a 30-years term, with a fixed royalty per ton, and a prescribed minimum output per annum.  This was a true sublease, for there was left a reversion in the company, its own term being 99 years.  This lease contained the terms, conditions, and covenants found in the Nelson lease to Humphreys.  March 18, 1893, the Wyoming Company assigned to plaintiff all of its reserved or remaining interest in this 40, and also its interest in the Jones lease, plaintiff agreeing to perform all of the obligations theretofore imposed upon said company; and, later, plaintiff became the equitable owner of the Jones lease.  Through in-

advertence and oversight, it did not obtain a formal assignment from Jones until after this action was brought, and the facts were then made to appear in an amended complaint.

November 27, 1893, the Wyoming Company transferred to the Chicago & Minnesota Ore Company all of its right, title, and interest in and to a number of mining leases held and owned by it, and included in terms in this transfer was the Jones lease of August 22, 1892. By the same instrument all of the right, title, and interest in and to the lands covered by the various leases was also conveyed to the Chicago Company. But it was recited that on March 18, 1893,—some six months previously,—the Wyoming Company had transferred and assigned all of its remaining interest in the 40 acres covered by the Jones lease to this plaintiff. After assigning and transferring the Jones lease and all of its remaining title in the 40, as it had done, there was nothing left for the Wyoming Company to convey to the Chicago Company, and nothing was acquired by the latter relating to either the lease, or the land described in it, through the instrument dated November 27, 1893. On the same day Humphreys assigned to the Chicago Company a number of mining leases, and among them the lease to the Wyoming Company of date May 10, 1892, and all of his right, title, and interest in and to the lands therein described, including the right to declare a forfeiture or forfeitures for noncompliance with the terms of any or all of said leases and all other interests, in whatever manner acquired. Subsequently, April 2, 1894, the Chicago Company transferred and assigned all of its rights obtained through the two instruments last mentioned to this defendant. The Chicago Company, claiming a breach of the conditions in the Jones lease respecting the payments of taxes and royalty, had given notice to plaintiff of its claim of right to re-enter upon the land, and to declare a forfeiture of the lease. September 29, 1894, defendant entered into possession, claiming the right to do so, as the assignee of the Chicago Company, because of plaintiff's failure to pay taxes and royalty, and by virtue of the notice of default.

From this statement it will be seen that, through several conveyances, plaintiff has succeeded to the leasehold interest held by Jones in this 40, and to the interest of the lessor, the Wyoming Company, in the lease, and also to the interest reserved by the latter when it made the sublease to Jones. All of these various

and different interests have met in the plaintiff, and the practical result is as if the Jones sublease had been for the full term of 99 years, instead of for a shorter period,—in legal effect, an assignment,—and had then been assigned to plaintiff. In brief, plaintiff has an assignment of all the rights acquired by the Wyoming Company through its assignment from Humphreys, the original lessee, and all of the interests the company had and held by virtue of its sublease to Jones. So that the only rights or interest held in the 40 by defendant are those obtained through the instrument dated November 27, 1893, executed by Humphreys to the Chicago Company, whereby he assigned to the latter the lease in which he was lessor, and the Wyoming Company lessee, and also conveyed all other right, title, and interest held by him in the land, including the right to declare a forfeiture and to re-enter in case of default. And it is by virtue of this instrument, with the notices before mentioned served by the Chicago Company, with the subsequent transfer to defendant corporation, coupled with actual default, that it entered into possession of the 40, and attempted to hold the same against plaintiff's claim of right to possession.

The question for determination is whether, through these instruments, the defendant acquired the right to enter upon the land in question, and to declare a forfeiture of plaintiff's leasehold interest therein. Humphreys had assigned, by virtue of the instrument executed May 10, 1892, his entire interest in this 40 acres to the Wyoming Company. This lease was for the whole term, so that no reversion remained in him, and the royalty to be paid per ton of ore was the same as that provided for in the Nelson lease. Humphreys reserved nothing, and no interest or estate remained. He attempted to reserve the right of re-entry for a breach of the conditions of the lease, but this did not change the legal relations of the parties. Whatever may have been the effect of the introduction of covenants into the instrument, as between the immediate parties thereto, the legal effect of the giving up of the reversion was not changed. Humphreys retained no estate or interest whatsoever in the lands demised, and not even the possibility of a reverter remained in him, for the right to re-enter cannot exist as an independent condition. It only exists as an incident to an estate or interest for the protection of which it is reserved. Craig v. Summers, 47 Minn. 189, 49 N. W. 742, and cases cited.

For illustration, the Wyoming Company sublet the 40 acres, for the period of 30 years, to Jones; a minimum number of tons of yearly output being stipulated for, and a royalty for each ton of ore in excess of that fixed in the Nelson lease or the Humphreys assignment being agreed upon. By the terms and conditions of this lease, the lessor had a reversionary interest, and the right of re-entry. Its reversionary interest was a 69-years term subsequent to the expiration of the 30-years term it demised; and it could reserve the right to re-enter and declare a forfeiture as an incident to its reversionary interest, and that it might protect the same.

But prior to the assignment to defendant of November 27, 1893, the lessor company transferred and assigned the reversionary term of 69 years, as before stated, and both terms met in plaintiff company. But the right of re-entry is, at most, a condition subsequent, and there was no breach when defendant claims to have acquired its right of re-entry, if ever acquired, November 27, 1893. This is conceded by defendant's counsel, and they also admit that the great weight of authority in England and in this country seems to be to the effect that in general the right of re-entry for a breach of a condition subsequent is not assignable. But their contention is that the general rule is subject to a modification made prior to the independence of the colonies by the statute 32 Hen. VIII. c. 34, and which, it is claimed, became incorporated into the common law of the Northwest Territory. We need not quote this statute, nor is it necessary for us to consider what force should be given to it in a proper case, for it has no applicability to the facts now before us. The right of re-entry is not an estate or interest in land, nor does it imply the reservation of a reversion. It is a mere chose in action, and when enforced the grantor is in through the breach of the condition, and not by reverter. Craig v. Summers, supra.

It is also claimed that defendant also acquired the right to re-enter, and of forfeiture, by reason of its payment of taxes and royalty due on and from this 40. The position is that having paid the whole amount of the blanket charge for royalty upon the lands occupied by both parties as tenants in common, in order to protect its own interests and preserve its own rights, defendant has been subrogated to all the rights and remedies held by the original lessor against plaintiff for a failure to pay its just proportion of the minimum amount of royalty. We cannot agree to this view.

If defendant, to protect and preserve its own interests and rights, has been compelled to pay a sum of money which should have been paid by plaintiff on account of royalty due to the lessor, it would undoubtedly be entitled to reimbursement, and, for enforcement of payment, might be entitled to an equitable lien upon plaintiff's estate. And it might also, as an incident, have the right of subrogation enforced in a court of equity. But there is no warrant for the claim that, through subrogation, it would have the right of immediate re-entry.

Order affirmed.