J. F. RUNDLETT v. G. HEILEMAN BREWING COMPANY.[1]

May 29, 1908.

Nos. 15,593—(64).

**Sale.**

Whether plaintiff sold to defendant or to another person a saloon, including lease, fixtures, and stock of liquors, is *held* to have depended upon issues of fact, which were properly determined by a jury against the defendant.

Action in the district court for Hennepin county to recover $1,000, balance claimed to be due on certain fixtures and also upon a stock of wines, liquors, etc. The case was tried before Frederick V. Brown, J., and a jury which returned a verdict in favor of plaintiff for $1,025. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*P. W. Guilford* and *George H. Gordon,* for appellant.

*Mead & Robertson,* for respondent.

JAGGARD, J.

Benz & Sons, who for present purposes may be regarded as the owners of the premises herein involved, executed to Starr and his wife as tenants in common a lease which forbade an assignment without the lessors' written consent. Starr sold the saloon fixtures and transferred the lease to plaintiff, Rundlett. The lease was not assigned in writing nor did Benz & Sons consent in writing to its transfer. Without question, Benz & Sons had, however, fully accepted and recognzed Rundlett as the successor in interest of the Starr lease for the unexpired term. On August 7, 1906, one Schenk, the local agent of defendant brewing company, secured a written option, signed by Rundlett, to sell within four days to defendant and E. McDonald, or either of them, the saloon, including the fixtures, the lease of the premises, and the stock of liquors, for $7,700. The option was drawn in accordance with "directions from the conversation between Mr. Rundlett, Mr. Barge, and myself (Schenk)." Schenk paid Rundlett $10 for this option. E. McDonald, named in the option, never,

[1] Reported in 116 N. W. 833.

so far as the record shows, appeared in any transaction. It is immaterial whether or not she was Barge's daughter, as defendant's brief says she was. No papers ran to her. No papers were signed by her. On August 10, Barge, in company with Schenk, visited the saloon of Rundlett. Schenk paid Rundlett $1,000 for a written extension of the option to the following effect: $2,000 was to be paid on or about August 16, 1906. When said sum had been paid, a bill of sale and possession of said premises were to be delivered, provided that, before delivery, a chattel mortgage should be made and delivered to the vendor to secure $4,700, payable as further therein provided. The option having expired, Schenk, and later Linker, another agent of the defendant, interviewed plaintiff with reference to the purchase of the saloon. As a result it was agreed to complete the sale. The defendant was to be given credit for the $1,000 which it had paid on the option. The situation as to the lease from Starr was fully explained to defendant. Benz & Sons told Schenk that Rundlett was not a tenant from month to month, but for the unexpired term of the Starr lease. "Mr. Rundlett's wishes had to be met with in that case all the way through. * * *" At a subsequent conversation Linker said to plaintiff: "We are buying this place, and with your consent Mr. Benz will give the G. Heileman Brewing Company a lease, and you give Jacob Barge a bill of sale. * * *" The bill of sale was drawn with the vendee's name in blank. Linker directed it to be filled out in the name of Barge. This was done. The bill of sale was delivered. A chattel mortgage was executed and delivered. The plaintiff requested Benz & Sons to make out a lease to defendant. This lease, as so executed, expired at the same time and required the payment of the same rental as the Starr lease. Its other terms were similar to, but not identical with, the terms of the Starr lease. Plaintiff commenced this action against the defendant for $1,000, the instalment of the purchase price overdue. The jury returned a verdict for plaintiff. This appeal was taken from the usual alternative motion by the defendant.

These facts have been set forth at some length because their correct statement essentially disposes of this controversy. Inasmuch as the verdict was for the plaintiff, they have been stated on the theory that the controversies concerning them were resolved in plain-

tiff's favor. It is wholly immaterial, on this appeal, that not all the testimony supported plaintiff's claim, or that some of it sustained defendant's contention. It was idle for defendant to have here controverted, for example, the responsibility of the defendant for the act of its agents, Schenk and Linker, or to have denied that defendant paid the consideration for the option and for its extension. There was an abundance of testimony supporting plaintiff's contentions on these points. The court submitted to the jury with entire fairness and sufficiency the plain issue whether the plaintiff sold to the defendant "personal property, consisting of a lease, fixtures, and stock of liquors and cigars," or whether the plaintiff "sold the stock and fixtures to Jacob Barge, and * * * defendant had nothing to do with such sale, other than to loan Barge some of the money to make the purchase and pay for his liquor license on the premises." The evidence fully justified the verdict of the jury. It would unquestionably have been reversible error if the court had instructed, as defendant requested, that there was no evidence in this case to warrant the jury in finding that the defendant received and accepted any of the goods or property which it is claimed were sold by the plaintiff to the defendant, or if it had at any stage of the proceedings directed a verdict for defendant.

The defendant has invoked the part of the statute of frauds which provides that every contract for the sale of goods for the price of $50 or more shall be void, unless the buyer accepts and receives a part of such goods, or the evidence of some of them, etc., and insists: "There is not a particle of evidence in this case which would warrant the inference that the lease, which it is claimed was transferred and delivered to the G. Heileman Brewing Company, was accepted as a part performance of the contract for the sale of fixtures and stock." A sufficient, but not the only, answer to this position is that there was a particle, and an abundance, of evidence to that effect, and to show that defendant paid part of the consideration of the sale. The jury has properly resolved the controversy against the defendant.

Other assignments of error have been examined, and found to be entirely without merit, and to justify no specific mention.

Affirmed.