(84 South. 366)

No. 23868.

BAIRD v. ATLAS OIL CO

(March 1, 1920.  Rehearing Denied April 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. LIBEL AND SLANDER ⊜⇒140—DEFENDANT IN SLANDER OF TITLE ACTION WHO CLAIMS TITLE MUST RECOVER ON STRENGTH OF OWN TITLE.

Where defendant in action in slander of title admits the acts charged and claims title in itself, it assumes the attitude of a plaintiff in a petitory action and must recover, if at all, upon the strength of its own title.

2. MINES AND MINERALS ⊜⇒81—ERROR IN DESCRIPTION IN TRANSFER OF OIL LEASE DOES NOT AFFECT RIGHTS OF ONE NOT CLAIMING THEREUNDER.

Where holder of oil lease transferred his rights in certain portion of land by instrument describing more land than was intended, such error and transferee's deed of correction did not affect the rights of one who claims under same lessor as such holder but not through the chain of title of which such transfers constitute a part.

3. MINES AND MINERALS ⊜⇒81—LESSEE NOT REQUIRED TO RECORD FACT OF PAYMENTS NECESSARY TO KEEP LEASE ALIVE.

Record holder of oil lease was not required to place anything on record to show that payments necessary to keep lease alive had been made.

4. MINES AND MINERALS ⊜⇒79(7)—BURDEN OF PROVING FORFEITURE OF OIL LEASE ON PERSON CLAIMING FORFEITURE.

One who claims forfeiture of lease for failure to make payments required to keep lease alive has burden of proving forfeiture.

5. MINES AND MINERALS ⊜⇒81—SUBSEQUENT LESSEE MERELY REQUIRED TO ASCERTAIN WHETHER PAYMENTS HAVE BEEN MADE BY RECORD HOLDER.

One seeking to acquire a subsequent mineral lease upon property to which the right had been previously conveyed would only have to inquire and inform himself as to the status of the claim of person in whose name property stood at the time he sought to deal with it, and would not be affected by such person's prior unrecorded lease; such lease being void under Civ. Code, art. 2266.

6. MINES AND MINERALS ⊜⇒79(6) — LESSOR WHO HAS PARTED WITH FEE OR ASSIGNED RIGHTS CANNOT DECLARE FORFEITURE.

A lessor who had parted with the fee or assigned the royalty rights could not declare a forfeiture for failure of the record holder of lease to make the payments necessary to keep the lease alive.

7. MINES AND MINERALS ⊜⇒81—SUBSEQUENT LEASE AFTER FORFEITURE BY RECORD OWNER OF PRIOR LEASE HELD GOOD NOTWITHSTANDING NECESSARY PAYMENTS BY LATTER'S TRANSFEROR.

Where record owner of oil lease failed to make the payments necessary to keep lease alive, a lease acquired subsequent to such default and upon assumption that prior lease has expired is good as against transferor of record owner as to land described by mistake, though transferor made such payments to lessor within the required time; the subsequent lessee being required merely to ascertain whether lessee of record had made the necessary payments.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Action by George O. Baird against the Atlas Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Thigpen & Herold, of Shreveport, for appellee.

DAWKINS, J. Plaintiff alleges that he is in the actual, physical, and corporal possession of the S. ½ of N. E. ¼ of section 24, less the west 30 acres thereof, in township 21 north, range 8 west of Claiborne parish, La., under a valid oil and gas lease from the legal owners and former possessors of said land; that, under and by virtue of said lease, he has drilled a number of wells upon said property, which are now producing oil in large quantities, and which he has been selling to the Standard Oil Company of Louisiana; that the defendant has addressed a communication to said · company, claiming to be the owner of an undivided one-half interest in and to said mineral lease, well knowing that it had no right thereto, and, notwithstanding petitioner's protest, continues to assert claim thereto, so that the said Standard Oil Company has withheld, and will continue to withhold, one-half of the purchase price of said oil until the said claim is retracted or removed by final judgment. Plaintiff prays for judgment in the sum of $25,000, $15,000 as damages for the loss of interest on the money so withheld and for annoyance and embarrassment due to said claim, and $10,000 as damages for attorney's fees incurred in the prosecution of this suit.

Defendant denies the validity of plaintiff's lease, admits the allegation with reference to the communication addressed to the Standard Oil Company, and claims ownership of the mineral rights under an alleged lease antedating that of plaintiff. It further avers that, through error and oversight, it had transferred to Denman & Williams, and the latter, in turn, had transferred to the Consolidated Progressive Oil Corporation the mineral rights upon the land in question, but that subsequently the said Consolidated Progressive Oil Corporation had reconveyed the same to defendant, and that all of the terms and conditions of its said mineral lease had been complied with, thereby giving it a valid and legal title to the property in dispute.

Defendant prays that the demands of plaintiff be rejected, and that he be required to give a full and detailed accounting for the oil taken from the leased premises, and for general relief.

### The Facts.

On the trial, it was admitted that the defendant claimed only an undivided one-half interest in the mineral rights, and, in fact, prior thereto, it had authorized the Standard Oil Company to pay to plaintiff the proceeds of the other one-half of the oil received from the land.

Plaintiff acquired an undivided one-half interest in the mineral rights in dispute from the same original author in title from whom the defendant claims to have acquired the same interest, to wit, Len Langston. As to the other undivided one-half, it is unnecessary to trace or discuss the title, for the reason that, as above indicated, it is admitted that plaintiff is the owner thereof. The lease under which defendant claims is of a date prior to that relied on by plaintiff, from the said Langston; but, for reasons which we shall hereafter discuss, the latter contends that all rights, if any, conveyed thereunder, had expired and terminated when he acquired.

On October 3, 1916, the said Len Langston executed to and in favor of one A. E. Wilder a mineral lease upon the premises here involved, in which it was stipulated that, if operations for the drilling of a well on lands

within five miles of Homer, La., were not commenced and prosecuted with diligence to a depth of 2,600 feet, unless oil were found in paying quantities at a lesser depth, within six months from the date of said lease, all rights thereunder should cease and determine. It further provided that the lessee might prevent such forfeiture by paying to the lessor the sum of $1 per acre, in which event the lease would be extended for another year, with the right to so renew for a period of three years. Drilling operations were not begun within the six months mentioned, nor was the one dollar per acre paid; but on May 18, 1918, the said Langston signed on the bottom of said instrument the following:

"I, Len Langston, the within lessor, do hereby consent and agree that the time for the paying the one dollar per acre as expressed in the second line of paragraph six of the within lease be and said (same) is hereby extended to January 1st, 1919; all other provisions of the within lease shall be and remain unchanged. This 18th day of May, 1918."

On November 17, 1916, pursuant to a previous agreement, the said A. E. Wilder transferred to the Atlas Oil Company, as a part of some 15,000 acres, whatever rights he may have had upon the land now in contest.

On August 15, 1917, the Atlas Oil Company executed to and in favor of G. W. Williams and T. T. Denman a transfer of the mineral rights upon some 3,753 acres of land, describing 'each tract according to the contract by which the said A. E. Wilder (from whom the Atlas Company had acquired) had acquired from the supposed owner of the land, the portion of the Len Langston tract so conveyed, being described as follows:

"(2) That certain oil and gas lease from Len Langston, dated October 3, 1916, in favor of A. E. Wilder and by said Wilder assigned to the Atlas Oil Company under date of November 17, 1916, in so far as same applies to and affects, the E. ½ of N. W. ¼ and W. ½ of S. W. ¼ the S. W. ¼ of N. E. ¼ and W. ½

of N. W. ¼ of N. E. ¼ of Sec. 19, T. 21 N. R. 7 W. The N. W. ¼ of S. E. ¼ the S. ½ of N. E. ¼ of section 24, T. 21 N. R. 8 W. Containing 260 acres more or less."

And on the 10th day of November, 1917, the said Williams and Denman transferred the same 3,753 acres, under the identical description, as to the Len Langston tract, to the Consolidated Progressive Oil Corporation.

It will thus be seen that, while the description embraces 320 acres (assuming that each one-sixteenth of a section contains 40 acres), the number of acres expressed was 260, or 60 acres less than the government subdivisions set forth called for.

The original Len Langston tract contained an even 800 acres, and acting on the assumption that it had only conveyed 260 thereof to Williams and Denman, and that they in turn had conveyed the same amount to the Consolidated Progressive Oil Corporation, the Atlas Oil Company, on January 1, 1919, the date to which the said Langston had extended the original lease to A. E. Wilder, paid to Langston the sum of $540, or at the rate of $1 per acre for the 540 acres which it thought that it had reserved from the sale to Williams and Denman, and said amount was received and accepted by him.

On September 5, 1919, the Consolidated Progressive Oil Company gave to the Atlas Oil Company a deed of correction, in which it was recited that the S. ½ of N. E. ¼ of section 24, township 21 N., range 8 W., had been erroneously included in the deeds to Williams and Denman and from the latter to the Consolidated Progressive Oil Corporation, and that it had not been the intention of any of the parties thereto to convey or to receive the same.

In the meantime, however, Len Langston had, within about two months after having received the $540 on January 1, 1919, offered to refund the Atlas Oil Company $80

of this amount, which, supposedly, was to cover the 80 acres now in contest, but the same was refused.

Thus we have the chain of title under which the defendant, Atlas Oil Company, claims a one-half interest in the mineral rights on the property involved herein.

On January 17, 1919, several months prior to the execution of the correction deed above mentioned, and about a month prior to the offer to refund the $80 to the Atlas Oil Company, the said Len Langston, for a consideration of $17,000 cash, and a yearly rental thereafter of the same amount, until drilling operations were commenced, executed in favor of Len T. Langston a mineral lease upon some 360 acres of land, and among which was the 80 now in dispute.

February 3, 1919, Len T. Langston conveyed to H. C. Walker, Jr., for a cash consideration of $32,900, the mineral rights on 329.5 acres of land, and which also included the property in question; and on the 20th day of June, 1919, the said H. C. Walker, Jr., and one Isaac Muslow, for $4,000 cash, and "other valuable considerations," conveyed to the plaintiff herein, George O. Baird, a portion of the same property, describing it as follows:

"The south half (S. ½) of the northeast quarter (N. E. ¼) of section twenty-four (24) less the west thirty (30) acres thereof, township twenty-one (21) north range eight (8) west, containing fifty-one (51) acres more or less."

The interest conveyed by Muslow represented the other undivided one-half of the said mineral rights which is not in dispute in this case.

Thus we have the chain of title under which the plaintiff claims, minus, of course, that covering the one-half interest acquired of Muslow, and which, as stated, is not in contest.

## Opinion.

[1] Plaintiff having instituted an action in slander of title, and the defendant having admitted the acts charged and claimed title in itself, the latter has assumed the attitude of a plaintiff in a petitory action, and, of course, must recover, if at all, upon the strength of its own title.

The only issue before the court, therefore, is the validity of defendant's title, for we may assume, and as a matter of fact the record seems to disclose, that plaintiff's title to the mineral rights is good, unless the prior claim of defendant from the common author can be sustained.

Hence, conceding for the discussion about to ensue that the original lease from Len Langston to A. E. Wilder, and the extension thereof to January 1, 1919, was valid and enforceable, we are called upon to determine the legal effect of the acts and doings of the parties as disclosed by the statement of facts above given. A proper answer to the following question will dispose of defendant's claims, to wit:

Did the payment to Len Langston on January 1, 1919, of the sum of $540, by the Atlas Oil Company, with the intention on its part that the payment should cover 540 acres of the 800 acres embraced in the original Wilder lease, have the effect of preserving its rights upon the 80 acres now in contest, when, at the time, though through error, the title thereto stood in the name of the Consolidated Progressive Oil Corporation, so as to be effective against plaintiff's ancestor in title, who acquired from the same vendor, the said Len Langston, on January 27, 1919?

[2-4] Plaintiff does not claim to have acquired any interest through the chain of title which passed from Len Langston to Wilder, Wilder to the Atlas Company, the Atlas Company to Williams and Denman, Williams

and Denman to the Consolidated Progressive Oil Corporation, by conventional conveyance; hence the error in the description, beginning with the Atlas Company and continuing down to the Consolidated Progressive Oil Corporation, and its subsequent correction, after plaintiff had acquired through mesne conveyances also from Langston, could not affect him, whether recorded or not recorded, if it were the land itself which had been conveyed, or an otherwise indefeasible title. If defendant had held such a title, it could have corrected the error at any time, either by suit or by agreement, and none could have complained, save those who might have acquired, relying upon the record, from its said vendees. Neither would it or its vendees have had to place anything of record to affect third persons, if it had had a valid lease, to show that the payments had been made which were necessary to keep the lease alive, so long as the title stood of record in the name of the one who made the payments. Busch-Everett Co. v. Vivian Oil Co., 128 La. 886, 55 South. 564. The right to make the payments would be an incident to the title which the record showed the lessee to possess, and no one would have the right to assume that the lessee or transferee had failed to make such payments and thereby forfeited his claims; hence it would devolve upon one claiming such forfeiture to make proof thereof.

[5, 6] However, the conveyance records are the only thing to which one dealing with real estate or any real right thereon needs to look, under the repeated decisions of this court; and one seeking to acquire a subsequent mineral lease upon property to which the right had been previously conveyed would only have to inquire and inform himself as to the status of the person's claims in whose name the property stood at the time he sought to deal with it. If that party had al-ready parted with his interest to some third person, the latter not having recorded his lease, this fact could certainly have no effect as to the proposed second lessee, for as to him the transfer would be utterly null and void, according to the plain letter of the Code. C. C. art. 2266. Therefore, when plaintiff's vendor, Len T. Langston, came to purchase the second mineral lease on the property in question, he was only required to ascertain if the Consolidated Progressive Oil Corporation, the owner, according to the records, of the first lease, had made the payments necessary to keep it alive. Why? Because that right was a mere incident accompanying the contract in which it had been stipulated, and no one else, as to third persons, dealing on the faith of the public records, enjoyed the privileges flowing therefrom. Certainly a lessor, who had parted with the fee or assigned the royalty rights, could not declare a forfeiture, under similar conditions, for the failure to make the payments timely. Thornton on Oil and Gas, p. 201, § 168; Ohio Iron Co. v. Auburn Iron Co., 64 Minn. 404, 67 N. W. 221; Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236.

[7] It does not appear that the Consolidated Oil Corporation, in whose name the first mineral lease stood on the records at the time the second was given to Len T. Langston, had made the payments in compliance with the extension to January 1, 1919; in fact, no such contention is made by the defendant, Atlas Oil Company, but, on the contrary, it averred that it had made a payment of $540 to Len Langston at a time when the Wilder lease stood on the public records in the name of the Consolidated Company. This, it is true, was $80 more than it owed Langston, at the rate of $1 per acre for the 360 acres which stood in its name; but this could not have the effect of revesting in it the title to any of the property which it had

parted with in the previous conveyance. This is not a case of paying the debt of a third person (no such contention being made in the pleadings, i. e., that the Atlas Company paid for the Consolidated) in which the debt is discharged, because the matter involved was not a mere question of indebtedness to be discharged, but of the exercise of a right of covenant in a deed, and for which substantial counter rights were to accrue, and hence the creditor had and has the right to expect and require that only the one to whom such rights are to flow shall be permitted to exercise the option which he had granted. Especially is this true where third persons have dealt with him in good faith upon the assumption that the record owner has permitted the first lease to expire. In a sense, the plaintiff's vendor did acquire from the Consolidated Company, not by virtue of a conventional transfer, but by operation of the forfeiture clause in the Wilder lease, as a result of which the right to drill and explore for oil and gas passed back to the original and common lessor or vendor, Len Langston, when the payments were not timely made. Murray v. Barnhart, 117 La. 1023, 42 South. 489; Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 793, 44 South. 481.

In view of the conclusions reached, we find it unnecessary to decide the question of whether or not one owning an undivided one-half interest in land may validly lease to another the undivided half of the mineral rights therein. Suffice it to say that the record shows that the plaintiff is now the holder of the entirety of those rights.

Taking into consideration all of the circumstances of this case, we do not think it is one in which damages should be allowed.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.