## K. T. WIEDEMANN v. HOSMER A. BROWN.[1]

November 3, 1933.

No. 29,504.

[1]Reported in 250 N. W. 724.

34

*Strong, Myers & Covell, William P. Fisher,* and *Harlan B. Strong,* for appellant.

*Louis B. Schwartz,* for respondent.

*OLSEN, Justice.*

Plaintiff brought suit in the municipal court of the city of Minneapolis to recover possession of part of a building under the forcible entry and unlawful detainer statute. The complaint alleges that defendant, since August 10, 1931, has been a tenant of the plaintiff at sufferance of the premises in question, that before the commencement of the action the plaintiff terminated the tenancy, and that defendant wrongfully and unlawfully withholds possession thereof from plaintiff.

The court, after trial, found these statements of the complaint true and directed judgment in favor of the plaintiff for restitution of the premises as prayed for in the complaint. Judgment was so entered, and defendant appeals.

The property in question is an office room and anteroom, or waiting room, in a building on the southwesterly 110 feet of lot 5,

block 217, in the city of Minneapolis. The entire tract of land is referred to quite frequently in the leases and oral evidence as station No. 3, having reference to an oil and gasolene station thereon operated by plaintiff. The building appears to consist of three parts, with partitions between them, one the office and rooms occupied by the oil station, the next a room or rooms occupied by a restaurant, and the third the office and anteroom occupied by defendant. Each part has a separate street entrance. The street entrance to the anteroom and office room in question is numbered 424 South Seventh street.

On June 28, 1929, the executors of the estate of one Frank L. Mowry leased the property in question to one W. G. Mowry and defendant Hosmer A. Brown for a term of 20 years from July 1, 1929, to June 30, 1949, inclusive, for a rental graduated from $1,800 to $3,000 per annum, payable in monthly instalments in advance each month. In addition thereto the tenants covenanted and agreed to pay all taxes, assessments, and water rents charged against the property during the term of the lease, subsequent to the taxes for 1927. The lease permits assignment thereof while no default exists thereunder, on condition that the assignment shall contain a covenant or covenants by the assignee to the effect that the assignee accepts all the terms, covenants, and conditions of the lease and agrees to comply with and be bound thereby.

On the same day Mowry and Brown assigned the lease to the General Holding Company, a corporation of which Mowry was president and Brown was secretary, with covenants as provided in the original lease.

On August 1, 1929, the General Holding Company, by Mowry as president and Brown as secretary, assigned the lease to E. L. Marsh and W. C. Marsh, with covenants as provided in the original lease.

On May 10, 1930, E. L. Marsh and W. C. Marsh assigned the lease to Oklahoma Oil Company, a corporation, of which Brown was president and one C. F. Bierbaum was secretary, with covenants as provided in the original lease.

Prior to this last mentioned assignment, on May 6, 1930, the Oklahoma Oil Company, by Brown as president, had entered into

an agreement with plaintiff Wiedemann and one Paulson to sell, assign, and transfer the lease in question and other leases, and property consisting of two other oil stations designated as stations Nos. 1 and 2, to said Wiedemann and Paulson. The agreement contains covenants by the Oklahoma Oil Company that the lease in question is in good standing, that it has good right and title to sell the same, and that there are no liens or encumbrances thereon.

This was followed on May 10, 1930, by an agreement wherein the Oklahoma Oil Company is designated as the vendor and Wiedemann and Paulson as the purchasers, reciting that the vendor has that day delivered and agrees to sell, assign, and transfer to the purchasers, for the consideration therein named, the premises therein referred to as "all said three oil and gasoline stations." The vendor further represents and covenants that it owns a lease to the ground on which station No. 3 is situated, describing the lease from the executors of the Frank L. Mowry estate; that said lease is in good standing; that it has good right and title to sell the same; and that there are no liens or encumbrances thereon. The agreement contains a provision that the purchasers agree to perform all the terms and conditions of said original lease. The interest of Paulson in these last mentioned agreements and transfers has been acquired by plaintiff Wiedemann.

■ Defendant claims the right to occupy and retain possession of the room and anteroom before mentioned, being a part of the building located on the premises originally leased by the executors of the Frank L. Mowry estate to defendant Brown and W. G. Mowry, which lease, by mesne transfers and assignments, is now owned and held by plaintiff Wiedemann, as above shown. His claim is based on an instrument dated August 2, 1929, made by E. L. Marsh and W. C. Marsh, as lessors, purporting to demise and lease to defendant Brown the office room and waiting room in question, for a term commencing July 1, 1929, and ending "the 31st day of June, 1949," for a rental of one dollar per annum. There is a further provision that the tenant agrees to pay for heat and light. This lease, as far as the record here shows, makes no reference to the original lease from the executors of the Frank L.

Mowry estate and does not contain any covenant or agreement by defendant Brown to be bound by, or obligated to comply with said original lease, or pay any of the rent therein provided. It purports to lease the two rooms to defendant for the entire term of the original lease, and operates as an assignment of that lease as to that part of the premises covered thereby. Cameron Tobin Baking Co. v. Tobin, 104 Minn. 333, 116 N. W. 838.

Defendant has remained in possession of the two rooms in question from prior to May 10, 1930, up to the present time. Plaintiff demanded possession before this action was brought.

■ Plaintiff has not shown any facts which would invalidate the lease from E. L. Marsh and W. C. Marsh to defendant, but claims that, as to plaintiff, the defendant is estopped from asserting or claiming any rights thereunder by reason of his acts and representations in and connected with the making of the two contracts whereby the Oklahoma Oil Company sold and transferred the original lease of the premises to plaintiff and Paulson. This question of estoppel is one of the vital questions in the case. Defendant was the president and manager of the Oklahoma Oil Company. He was the only one with whom plaintiff dealt and negotiated in the purchase of the lease held by that company. Defendant was the only officer of the company who signed the first agreement. The second agreement was signed by defendant as president and Bierbaum as secretary, but, as far as appears, Bierbaum had nothing to do with the transaction except the signing of the instrument at the direction of defendant. If all other necessary elements of estoppel were here shown, defendant would be estopped from asserting any claim to the premises in question by the representations contained in the contracts, caused to be prepared by him and executed by him as president of the Oklahoma Oil Company. The numerical weight of authority, including cases from the United States circuit court of appeals, so holds. The cases on both sides of the question are collected and cited in the note to Jacksonville P. S. Corp. v. Calhoun Water Co. 64 A. L. R. 1550, commencing on page 1556.

Where an officer of a corporation is the sole agent who negotiates, procures, and executes a contract for the corporation, and

therein represents certain facts to be true, he should be and is estopped to deny the truth of the representations so made, although he signs the contract only in his official name. The estoppel is not strictly an estoppel by contract, but an equitable estoppel by conduct and misrepresentations.

■ Defendant relies on Kern v. Chalfant, 7 Minn. 393, 398 (487). It is stated in that case that "Kern, in executing the deed with covenants to Thompson, did not estop himself in any manner. He was merely the attorney of the grantor." No reasons are stated and no authorities cited. The Kern case has been considered and distinguished on this point in the case of North Star Land Co. v. Taylor, 129 Minn. 438, 152 N. W. 837. That case practically, although not expressly so stating, overrules the Kern case. While in North Star Land Co. v. Taylor, 129 Minn. 438, 152 N. W. 837, the attorney in fact who executed the deed was estopped by reason of the fact that his principal was not bound by the deed, therefore the attorney bound himself, yet in discussing the question of estoppel the court said [129 Minn. 440]:

"We submit that Wilson is estopped from disturbing or questioning either defendant's title or possession. This follows whether Wilson be considered bound by the terms of the deed he executed as attorney in fact (on the theory that not binding Frenier he bound himself) or because of the doctrine of equitable estoppel, or estoppel *in pais*, his title cannot now be asserted."

The court then cites numerous decisions, many of them holding that equitable estoppel, or estoppel *in pais*, results irrespective of whether the deed or contract did or did not bind the principal. This holding in North Star Land Co. v. Taylor, 129 Minn. 438, 152 N. W. 837, is in conflict with the Kern case and overrules it.

■ Elements other than the making of the misrepresentations are necessary to an estoppel. In 21 C. J. p. 1119, § 122, it is said that the party to whom the representation was made must have been without knowledge or the means of knowledge of the real facts and must have relied on or acted upon it to his prejudice. This court has stated the principle in various terms: That there

can be no estoppel as to facts equally known to both parties; as to facts which the party invoking the estoppel ought, in the exercise of reasonable prudence, to have known; or unless the party claiming the estoppel was ignorant of the true situation when he acted. The cases in this court are cited in notes 25, 26, and 27, 2 Dunnell, Minn. Dig. (2 ed.) p. 918.

On cross-examination of plaintiff, in answer to the question: "Have you ever heard that Mr. Brown did have a lease on this property, have any lease on this property, 424 South Seventh street?" he testified as follows:

A. "Before or after the signing of that agreement?

Q. "Yes, I said after.

A. "When we first began our negotiations, when I first began them with Mr. Brown, he told me he had a lease on that office from the Oklahoma Oil Company, with whom I was dealing. I think I saw him perhaps eight or ten different times during the course of our negotiations for these properties. Shortly thereafter he volunteered the information that he did not expect to keep that office, that he was engaging in a calf food business, developing it with Mr. Hardin of the Colonial Warehouse Company; that he expected to move down to the Colonial Warehouse Company. Please understand this office was not what prompted me to go into this deal, I wanted the retail gas business, this extra room was an incident, nothing more than that."

Other testimony by plaintiff shows that the "volunteered" statements claimed to have been made by Brown about his not expecting to keep the office and expecting to move to the Colonial Warehouse Company were made some time after the contracts between plaintiff and the Oklahoma Oil Company were executed. True, the question as finally asked referred to the time after the signing of the agreements; but plaintiff voluntarily went beyond that and frankly admitted that before the agreements were executed Brown told him that he had a lease of the office from the Oklahoma Oil Company. There is nothing in the record before us, in plaintiff's further testimony, explaining, qualifying, or repudiating the ad-

missions so made. These admissions by plaintiff, and the further facts as to Brown's continued occupancy of the office rooms up to the commencement of this action in January, 1933, collection by plaintiff of payments for light used by Brown and one payment for heat furnished, as hereinafter more fully set out, without any legal action by plaintiff for recovery of possession up to that time, seem conclusive on the question of estoppel. This evidence is quite conclusive to the effect that plaintiff knew before he entered into the contracts with the Oklahoma Oil Company that Brown held a lease of the office rooms, and also that plaintiff did not consider these office rooms of any importance in the transaction and did not rely upon the representations made in the contract to the effect that these rooms were included in the sale and that the oil company's lease was free of liens and encumbrances, and so sold to plaintiff. His admissions and testimony amount to this: That, as he claims Brown told him that he held a lease from the Oklahoma Oil Company, while in fact the lease was from E. L. Marsh and W. C. Marsh, of which plaintiff was not informed, therefore he had no knowledge or notice of any outstanding lease of these two rooms. Notice that Brown in fact had a lease of the rooms, even if a wrong lessor was named, was sufficient. On the record presented, there was as a matter of law no estoppel.

■ One other point may be considered. As already noted, for some two and a half years after the agreements were made Brown retained possession before plaintiff brought any action to obtain possession. For some 12 months plaintiff collected from Brown $3 per month for light furnished for this office. Statements for such payments were sent to Brown. One payment of $10 for heat was made. An agreement was entered into for payment of a proportionate share of the cost of the heat, but no payments were asked or made under that agreement. Plaintiff testified that he permitted Brown to occupy the premises as a matter of courtesy and on Brown's promise that he would later move out. Viewing the evidence on this point in the most favorable light for the plaintiff, it must be held that, even if there had been an estoppel as to Brown's lease, he is in possession by plaintiff's consent and per-

mission, and his possession is that of a tenant at will rather than a tenant at sufferance. A tenancy at sufferance arises where a person wrongfully holds over after the expiration of his tenancy or after his estate or right has ended. It differs from the tenancy at will, where the possession is by the permission of the landlord. Thompson v. Baxter, 107 Minn. 122, 119 N. W. 797, 21 L.R.A. (N.S.) 575. A tenant at sufferance is one who comes into the possession of land by lawful title but who holds over by wrong after the termination of his term. 8 Wd. & Phr. (1 ser.) p. 6906. Where the holding is by permission of the owner or landlord it is not wrongful.

The evidence in the record before us is insufficient to sustain a finding that defendant was estopped from claiming the right to possession under his lease or that he was a tenant at sufferance.

Other points argued do not require special consideration.

The judgment appealed from is reversed.