## EMANUEL KOSTAKES v. JOSEPH DALY AND ANOTHER. SCHWEN ICE CREAM & CANDY COMPANY, APPELLANT.[1]

February 3, 1956.

No. 36,603.

*Frundt & Hibbs* and *A. H. Clemens,* for appellant.
*Desmond B. Hunt,* for respondent.

MURPHY, JUSTICE.

This appeal grows out of an unlawful detainer action for the restitution of certain commercial premises in the city of Rochester,

[1]Reported in 75 N. W. (2d) 191.

Minnesota. Plaintiff claims the right to restitution by reason of a breach of condition as to use on the part of the defendant-appellant, Schwen Ice Cream & Candy Company. The suit was initially instituted in municipal court and the resulting decision for the plaintiff was appealed to the district court. After trial in the district court resulting in findings for the plaintiff, the defendant, Schwen Ice Cream & Candy Company, appeals from an order denying its motion for a new trial.

The premise in question, which is a two-story brick structure with basement, is owned by one Irene Daley. On November 8, 1941, she leased the property to the plaintiff for a period of ten years. On September 8, 1947, the lease was extended for an additional six years to November 9, 1957, the rent being increased approximately $40 to a total of $285 a month. On May 1, 1948, Kostakes sublet the first floor and basement of the property to one Van Kraven for a period of seven years at a monthly rental of $275. Subsequently Van Kraven transferred his interest in the sublease to Joseph Daly. On January 20, 1953, Kostakes and Joseph Daly entered into a new lease including the same floor and basement at an agreed monthly rental of $350 for the period beginning February 1, 1953, and ending November 9, 1957, which was the day on which Kostakes' lease with the owner, Irene Daley, was to terminate.

The pertinent provisions of this agreement are as follows:

"[The Lessee takes the described premises] To Have And To Hold, The said premises just as they are, * * * for the following purposes, to-wit: off sale liquor store.

"* * * if said leased premises shall be appropriated to or used for any other purpose or use than is hereinbefore specified: * * * the said Lessee does hereby authorize and fully empower said Lessor or his agent to cancel and annul this lease at once and to re-enter and take possession of said premises immediately and by force if necessary, without any previous notice of intention to re-enter, and remove all persons and their property therefrom, * * *. Should lessee desire to assign this lease to third party, lessor agrees to give his consent thereto but in the event of any such assignment by lessee the lessee

shall not be relieved from any obligation to pay all of the rentals specified in this lease."

A short time after this agreement was made, Joseph Daly began negotiations with the defendant Schwen Ice Cream & Candy Company for the assignment of Daly's interest in the lease to that defendant. Before the Schwen company completed its agreement with Joseph Daly for the transfer of his interest in the property, it contacted the owner, Irene Daley, who was then in California. On February 14, 1953, it made a contract with her whereby she leased the first floor and basement to the Schwen company for a period beginning November 9, 1957, when her lease to Kostakes was to expire, and extending until the 9th day of March 1963. After obtaining this lease the Schwen company took the assignment of Joseph Daly's interest, for which it paid him the sum of $12,000, and assumed Daly's obligation to pay the monthly rental of $350 to the plaintiff.

About February 25, 1953, Joseph Daly, who had been operating an off-sale liquor business, vacated the premises and moved to a different location. At that time the defendant Schwen company took possession and immediately began to repair and remodel the building so as to make it suitable for use as an ice cream and confectionery establishment. Kostakes apparently learned of the assignment to the Schwen company a short time after the transaction at which time he expressed the view to Daly[2] that the premises could not be leased to anyone unless they had an off-sale liquor license. There was some evidence that Kostakes, who lived on the second floor of the property, had made some attempts to notify the Schwen company of his disapproval of its intended use of the building by complaining to various workmen about the premises, but these conversations were denied.

On approximately February 27, 1953, the defendant company submitted its first rent check payable to Kostakes in the amount of $350 to the First National Bank of Rochester. The payment of the rent

---

[2]Joseph Daly was one of the original defendants, but the action as to him was dismissed in the municipal court.

to the bank was in pursuance of Joseph Daly's practice of paying monthly rental to the bank where it was applied to Kostakes' account. The rent was for the month of March 1953 and the check therefor was accepted and endorsed by the bank for Kostakes. The latter claimed he personally knew nothing of the bank's receipt of the check and it does not appear that the bank accepted on behalf of Kostakes any further checks tendered by the Schwen company. On March 1, 1953, the Schwen company placed a sign in the window indicating that the property was to become the "New home of Schwen's Ice Cream Store."

On April 25, 1953, the plaintiff notified the defendant-appellant in writing that he considered the lease violated because the building was being used for purposes other than an off-sale liquor establishment. At that point in time, the Schwen company had expended something over $10,000 in remodeling the premises. Upon refusal of Schwen to vacate the premises, the plaintiff commenced this action in unlawful detainer.

■ As a result of the series of transactions herein detailed, the relations of the parties with respect to the property and to each other should be noted. When on January 20, 1953, Kostakes sublet the first floor and basement to Joseph Daly for a period extending to November 9, 1957, the transaction became an assignment rather than a sublease of Kostakes' interest as to that portion of the premises. That was the legal effect of the lease because the period that the sublease was to run terminated simultaneously with the original lease negotiated between Kostakes and the owner, Irene Daley, for the entire building. Such an assignment takes place by operation of law even though the quantity of the portion sublet is not coincident with the total interest which the sublessor has received from the original lessor.[3] Had Kostakes retained but a part of the term, regardless of how small, the legal effect of the transaction would have been a sublease and the relationship of landlord and tenant

[3]Wiedemann v. Brown, 190 Minn. 33, 250 N. W. 724; Cameron Tobin Baking Co. v. Tobin, 104 Minn. 333, 116 N. W. 838; Annotation, 99 A. L. R. 220.

would have continued to exist between Kostakes and Joseph Daly. But because a pro tanto assignment was effected, the privity of estate between Kostakes and Joseph Daly was dissolved leaving only a privity of contract, while there came into play a new privity of estate between Joseph Daly and the original lessor, Irene Daley, thus giving Irene Daley the right to enforce against the sublessee, Joseph Daly, all the covenants that run with the land[4] as well as her rights against Kostakes as expressed in the contract between them.

■ The appellant contends that the court erred in holding that the use of the premises for a purpose other than "off sale liquor store" constituted a breach of covenant which entitled plaintiff to forfeiture and possession of the property in question. Both parties rely on Davidson v. Minnesota L. & T. Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418, wherein this court revised a trend of some earlier cases[5] which held that a right of reentry exists not as an independent condition but only as an incident to an estate or interest in the protection of which it was reserved. In that case Davidson secured a 100-year lease to certain land in St. Paul for which he agreed to pay a rental of $5,100 per annum for the first ten years, $5,400 for the second ten years, and $5,700 for the remainder of the term. About four years later he sublet the property to Gilfillan for an annual rental of $10,000 per year for the remainder of the term. Gilfillan improved the property and financed the improvement through a trust deed given to the defendant bank. There was a default in the trust agreement and foreclosure followed. The time for redemption expired and the defendant bank succeeded to Gilfillan's interest. The defendant there claimed that Davidson had parted with all of his interest in the property; it refused to make further payments to him and offered to pay the rents reserved in the original lease direct to the original lessor. The court decided that Davidson had an enforceable contract right to the rent differen-

---

[4]See, Davidson v. Minnesota L. & T. Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418; 32 Am. Jur., Landlord and Tenant, §§ 314 to 318; 51 C. J. S., Landlord and Tenant, § 37d.

[5]Cameron Tobin Baking Co. v. Tobin, 104 Minn. 333, 116 N. W. 838; Ohio Iron Co. v. Auburn Iron Co. 64 Minn. 404, 67 N. W. 221.

tial even to the extent of an unlawful detainer action and modified prior decisions by holding (158 Minn. 428, 197 N. W. 839) :

"Where a sublease for the full term contains covenants to perform undertakings and conditions *of substantial advantages to the sublessor,* and, for the purpose of securing the performance of such covenants, the parties stipulate that in case of nonperformance the sublessor shall have the right to re-enter and repossess himself of the premises, we know of no reason why effect should not be given to their contract." (Italics supplied.)

It is the emphasized portion of the above quotation upon which this case must turn. In the Davidson case the rent differential constituted a substantial interest. Had he not been able to enforce the covenant to pay rent, this substantial interest would have been lost. In the instant case there has been no showing that the requirement that the premises be used as an "off sale liquor store" is of substantial advantage to the plaintiff, Kostakes. He contends that the presence of an off-sale liquor store would definitely assure the availability of funds for the payment of rent because of the likelihood that such business will succeed. We do not consider this argument as having merit. There is no reason to believe that an ice cream and confection store would be in any greater danger of insolvency than an off-sale liquor store. Secondly, the plaintiff now has not only one but two persons to look to for rent. Under the express provisions of the sublease, as well as under the normal privity of contract, Joseph Daly is still liable for the rent and so too is the Schwen company.

Under the decision in the Davidson case the sublessor may not reenter and reclaim the premises in the absence of the required showing of substantial advantage of the covenant to the sublessor. There is no claim here that Kostakes has been disturbed in the use or enjoyment of the remaining portion of the premises. The Davidson decision was intended for the protection of a sublessor whose substantial interest in the remaining term of the lease was imperiled. It was not intended as a rule which a sublessor might through caprice or whim use to damage others. Here, Kostakes has assigned

an entirety of interest and has retained nothing which is in need of protection by way of a restrictive covenant. To grant him possession would only result in substantial loss to the defendant-appellant without in any way affecting plaintiff's use and enjoyment of the part of the premises which he now occupies. In Warren v. Driscoll, 186 Minn. 1, 5, 242 N. W. 346, 347, we said:

"Forfeitures are not favored and will not be enforced when great injustice is done thereby and the one seeking a forfeiture is adequately protected without."

There remain other questions raised by briefs and arguments which in view of the foregoing do not require discussion. It should suffice to point out that plaintiff, Kostakes, was aware of the assignment shortly after its consummation in February 1953, and yet notice to vacate was not conveyed to the Schwen company until April 25, 1953. During that period of time the Schwen company invested over $10,000 in remodeling the property prior to its opening for business. Although the trial court found that Kostakes had complained about the proposed use to the workmen who were remodeling the premises, no real effort was made to contact the Schwen company officials. The plaintiff thus in effect stood idly by while the defendant-appellant invested a large sum of money in the property. To allow a forfeiture in such a case would not only be contrary to the principles set forth in the Davidson case but would not be in accord with a just and equitable solution of the controversy.

Reversed with directions to enter judgment for defendant-appellant.