**In re George PAMPOUKIDIS and Christina Pampoukidis, d/b/a Christy's, Debtors.**

**Bankruptcy No. 5-88-01134.**

United States Bankruptcy Court, D. Connecticut.

Aug. 31, 1989.

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for debtors.

Barbara L. Hankin, Zeisler & Zeisler, P.C., Bridgeport, Conn., for Donald K. Pierce.

## MEMORANDUM AND DECISION ON MOTION TO ASSUME UNEXPIRED LEASE

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtors move under Bankruptcy Code § 365(a) to assume a nonresidential lease. Donald K. Pierce, a prime lessee, objects.

### I.

On April 18, 1985, DAC Associates leased a building located at 1275 Post Road, Fairfield, to Pierce for a term of five years with three successive five year options. On May 6, 1988, Pierce and the debtors entered into an agreement (the "Agreement") under which the debtors purchased the restaurant business on that property for $350,000.00 and gave Pierce a five-year $292,500.00 promissory note (the "note"), secured by restaurant equipment and second mortgages on two pieces of real property. *Pierce Memorandum Exhibit A*, ¶ 2, at 2. The purchase price was allocated as follows: $50,000.00 for a covenant not to compete; $200,000.00 for equipment, machinery, furniture and leasehold improvements; and $100,000.00 for goodwill. *Id.* ¶ 14, at 7. The Agreement expressly provided that the debtors would be added as tenants, that Pierce would remain as a tenant until he was paid in full on the note, and that Pierce would waive his right of entry as a tenant so long as the debtors were not in default on the note. *Id.* ¶ 8.a., at 6. Performance of the Agreement was made contingent on DAC's consent to the assignment of the lease from Pierce to the debtors.

On May 31, 1988, the debtors, Pierce, and DAC executed an "Assignment of Lease" (the "Assignment") which provided in part:

1. The lessor hereby consents to the addition of the [debtors] ... as additional lessees under said Lease so that the Lessees under the Lease are Donald K. Pierce ... [and the debtors];

2. The [debtors] ... hereby agree to be added to said Lease as lessees and agree to be bound by its terms;

3. Said [debtors] ... agree to perform all the terms, covenants and conditions of said Lease upon the part of the Assignor therein named to be performed and to save said Assignor harmless thereon;

4. The Assignor hereby assigns said Lease to the [debtors] ... conditioned upon payment by [debtors] ... to Assignor of a promissory note ·dated May 18, 1988 in the principal amount of $292,-500 which note is due, if not paid sooner, on May 18, 1993.

The Assignor shall provide the Lessor with a certification that said note has been paid in full. Upon receipt of said certification, the assignment shall be deemed effective provided that this lease shall then be in full force and effect and the Assignor and debtors ... shall have fully performed all of its terms and conditions.

\* \* \* \* \* \*

6. The Assignor does hereby remise, release and forever discharge the Lessor from all manner of action and actions, cause, causes of action, suits, debts and claims and demands whatsoever that the said Assignor had or may have now or in the future against the Lessor, provided this assignment to said [debtors] ... becomes effective.

7. Lessor consents and agrees that the Assignor shall be released from the terms, provisions, rights and objections under said Lease when said assignment becomes effective.

*Pierce Memorandum Exhibit B,* ¶¶ 1–4, 6–7, at 2–3.

By a letter dated October 19, 1988, DAC notified the debtors and Pierce that they were in default under the lease for nonpayment of rent. *Pierce Memorandum Exhibits C and D.* On November 29, 1988, Pierce served a notice to quit upon the debtors, *Pierce Memorandum Exhibit G,* who thereafter cured the rent arrearages but have made no payments on the note

since September, 1988. On December 19, 1988, the debtors filed a petition under chapter 11. On January 26, 1989, they filed the instant motion.

## II.

### A.

The debtors motion to assume the lease is premised upon the assertion that the Assignment was correctly labeled and in fact assigned the lease from Pierce to them and that therefore a cure of the default on the note is not a condition precedent to assumption under § 365. Pierce, on the other hand, contends that the effect of the Assignment was the creation of a sublease because he conveyed less than his entire interest for the unexpired term of the lease by reserving the right to enter upon default on the note and because he remained on the lease as DAC's lessee, thereby retaining a privity of estate with DAC rather than mere privity of contract.[1] Thus, Pierce argues that the debtors may not assume the lease without also assuming the "sublease", which under § 365(b) requires that they cure the default on the note.[2] The issue raised by Pierce's objection requires a determination of whether the debtors' tenancy was derived from an assignment or a sublease.

Bankruptcy Code § 365 provides in part:

(a) Except as provided ... in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor.

(b)(1) If there has been a default in an ... unexpired lease of the debtor, the trustee may not assume such ... lease unless, at the time of assumption of such ... lease, the trustee—

---

1. During occupancy of the premises, a lessee holds both privity of estate and of contract. An assignment of the lease divests a lessee of privity of estate and creates that relationship between the lessor and the assignee, so that the lessor has a right of action directly against the assignee on the covenant to pay rent and other covenants which run with the land. *See Kostakes v. Daly,* 246 Minn. 312, 75 N.W.2d 191 (1956); *Davidson v. Minnesota Loan & Trust Co.,* 197 N.W. 833 (Minn.1924); 49 Am.Jur.2d

§ 397, at 415 (1970); R. Schoshinski, *American Law of Landlord and Tenant* ¶ 8.12, 559–68 (1980).

2. It is assumed that Pierce equates performance under the Agreement with an obligation under an alleged sublease and that failure to make payments on the note constitutes a default under the sublease.

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such ... lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such ... lease.

In the absence of a conflicting federal interest, federal courts look to state law which creates and defines property rights. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). In *Rocklen v. Radulesco, Inc.*, 10 Conn.App. 271, 274–75, 522 A.2d 846 (1987), the Connecticut Appellate Court stated:

The basic distinction between an assignment and a sublease is that by the former, the lessee conveys his whole interest in the unexpired term, leaving no reversion in himself; the latter transfers only a part of the leased premises for a period less than the original term. Contrary to Radulesco's claim, a mere reservation of the right of entry on default does not constitute retention of a reversionary interest.

(Citations omitted).[3] A reversion is an absolute right of possession in the transferor for a period of time after the expiration of the transferee's interest, not a contingent right or possibility of possession. *Berkeley Dev. Co. v. The Great Atl. & Pac. Tea*

*Co.*, 214 N.J.Super. 227, 518 A.2d 790, 795 (Ct.Law Div.1986); R. Schoshinski, *American Law of Landlord and Tenant* ¶ 8.12, at 556–57 (1980).[4]

Contrary to Pierce's assertions, the Assignment did convey his entire interest for the entire term of the lease. Pierce's right of entry upon the debtors' default on the note does not disturb that conclusion. *Rocklen, supra*, 10 Conn.App. at 274–75, 522 A.2d 846. Pierce's argument that his status as a "lessee" put him in privity of estate with DAC and therefore established a sublease is also unsupported by the Assignment. To the contrary, the Assignment specifies that the debtors agreed to perform all of the lease covenants, and they did in fact pay the rent directly to DAC, so that privity of estate was established between the debtors and DAC. I further find that the language which specified that Pierce and DAC were to exchange mutual releases when the debtors paid the note referred to a release of contractual rights. That provision recognized that Pierce and DAC were to remain in contractual rather than estate privity.

### B.

Pierce makes to alternative arguments in support of his objection. Relying on *Bistrian v. Easthampton Sand & Gravel Co., Inc. (Matter of Easthampton Sand & Gravel Co., Inc.)*, 25 B.R. 193 (1982), he contends that the lease was intended as security for the note. In *Bistrian*, a creditor sold its business and leased the property where it was located to the debtor. The

---

**3.** *See also* R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Real Property* ¶ 6.66, at 382 (1984):

With an assignment the tenant transfers the right of possession to all or part of the premises for the full time remaining on the term. With a sublease the tenant transfers the right of possession to all or part of the premises for a time, be it 10 years or a day, less than the full time remaining.

**4.** A minority view holds that the reservation of a right of entry for default creates a sublease. *See, e.g., Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 220 Cal.Rptr. 818, 709 P.2d 837, 839 (1985); *Novosad v. Clary*, 431 S.W.2d 422, 426 (Tex.Civ.App.1968); *Lebel v. Backman*, 342 Mass. 759, 175 N.E.2d 362 (1961). A few states

also look to the intent of the parties in determining whether a transfer is an assignment or a sublease. *See, e.g., Castle v. Double Time, Inc.*, 737 P.2d 900, 902–03 (Okla.1986); *First Am. Nat'l Bank v. Chicken Sys. of Am., Inc.*, 510 S.W.2d 906, 908 (Tenn.1974); *Jaber v. Miller*, 219 Ark. 59, 239 S.W.2d 760, 764 (1951). However, as *Rocklen* makes clear, Connecticut courts do not look to the intent of the parties, but instead determine whether the transferor's entire interest is transferred. *See also Joseph Bros. Co. v. F.W. Woolworth Co.*, 844 F.2d 369, 372 (6th Cir.1988); *Thomas v. United States*, 205 Ct.Cl. 623, 505 F.2d 1282, 1286–87 (1974); *Haynes v. Eagle–Picher Co.*, 295 F.2d 761, 763 (10th Cir.1961), *cert. denied*, 369 U.S. 828, 82 S.Ct. 846, 7 L.Ed.2d 794 (1962).

lease was assigned a specific value in the transaction, and payment on a note was made a specific condition of the lease. The court found that default on the note was also a default on the lease and that the parties intended that the lease would secure the note. In the instant case, the note was secured by other property. No value was assigned to the lease. *Pierce Memorandum Exhibit A,* ¶ 2, at 2.

Pierce also unsuccessfully argues that the Assignment is an executory contract and that the debtors must cure the defaults on the note as a condition precedent to its assumption. However, whether or not the Assignment is an executory contract, the debtors do not propose to assume it. Rather, they seek to assume the lease with DAC.

See also, Bkrtcy., 67 B.R. 946.

## III.

For the foregoing reasons, Pierce's objection to assumption of the lease is overruled, the debtors' motion to assume is granted,[5] and IT IS SO ORDERED.

---

**5.** This decision does not consider whether any

right that Pierce has to enter will survive any